DOUGLAS EVANUSKA ET AL. *v.* CITY OF
DANBURY ET AL.
(AC 27263)

McLachlan, Gruendel and Lavine, Js.

Argued September 15, 2006—officially released January 2, 2007

*Jonathan H. Dodd,* for the appellants (named plaintiff et al.).

*Colette Griffin,* with whom, on the brief, were *Melanie A. Dillon* and *Jason E. Indomenico,* for the appellees (defendants).

*Opinion*

LAVINE, J. The sole issue presented in this appeal is whether a volunteer firefighter's participation in the repair of his station house's roof is an activity that falls within the definition of "fire duties" under the Workers' Compensation Act (act), General Statutes § 31-275 et. seq. The plaintiffs, volunteer firefighters Douglas Evanuska and Paul Williams,[1] appeal from the decision of the workers' compensation review board (board) affirming the decision of the workers' compensation commissioner (commissioner) that their injuries were not compensable under General Statutes § 7-314a (a).[2]

---

[1] David Evanuska, who also was a claimant before the workers' compensation commission, withdrew his claim prior to the appeal and is therefore not a party to the present case. We therefore refer in this opinion to Douglas Evanuska and Williams as the plaintiffs.

[2] General Statutes § 7-314a (a) provides in relevant part that "active members of volunteer fire departments . . . shall be construed to be employees of the municipality for the benefit of which volunteer fire services . . . are rendered . . . and shall be compensated in accordance with the provisions of chapter 568 for . . . injury incurred while in training for or engaged in volunteer fire duty . . . ."

The plaintiffs contend that the commissioner improperly applied § 7-314a (a) to his factual findings when he concluded that they were not ordered by a superior or commanding officer to participate in repairing the roof of the station house. Thus, they claim that the commissioner mistakenly concluded that they were not engaged in "fire duties," as defined in General Statutes § 7-314 (a).[3] We disagree and affirm the decision of the board.

The commissioner found the following facts. On October 19, 2002, the plaintiffs, who were active volunteer firefighters for the Germantown hose company (fire company) in Danbury, attended a work night[4] that was organized to make necessary repairs on the roof of the station house. They were injured when the scaffold on which they were standing collapsed, causing the two men to fall some fifteen feet to the ground. The plaintiffs had been invited by the board of managers of the fire company to volunteer their time for the purpose of fixing the roof. The board of managers is responsible for the administrative and business functions of the fire company and has no responsibility for firefighting activities. Before the scaffolding collapsed, the plaintiffs were receiving directions from the chief of the fire

---

[3] General Statutes § 7-314 (a) defines the term "fire duties" for purposes of General Statutes § 7-314a to include "duties performed while at fires, while answering alarms of fire, while answering calls for mutual aid assistance . . . while directly returning from fires, while at fire drills or parades, while going directly to or returning directly from fire drills or parades, while at tests or trials of any apparatus or equipment normally used by the fire department, while going directly to or returning directly from such tests or trials, while instructing or being instructed in fire duties . . . while answering or returning from fire department emergency calls and *any other duty ordered to be performed by a superior or commanding officer in the fire department* . . . ." (Emphasis added.)

[4] The fire company on its application for membership lists participation in company functions, such as work nights, as a duty expected of a volunteer firefighter. The parties in their briefs refer to these work nights as work parties.

company with regard to how to go about reroofing the building, notwithstanding that all volunteers had a working knowledge, if not expertise, in construction or a related field.

On the basis of these findings of fact, the commissioner concluded that the plaintiffs were not injured while engaged in fire duties and dismissed their claim. The plaintiffs subsequently filed a petition for review and reasons for the appeal with the board and a motion to correct with the commissioner. The commissioner denied the motion to correct in its entirety. The plaintiffs filed amended reasons for appeal. The board held a hearing on the petition for review and thereafter affirmed the commissioner's dismissal, concluding that there was sufficient evidence in the record to support his decision. This appeal followed. Additional facts will be set forth as necessary.

On appeal, the plaintiffs argue that the factual findings of the commissioner support the conclusion that they were injured while engaged in a fire duty and that they are therefore entitled to benefits under § 7-314a. They assert, first, that they were *expected* to participate in the work night and, second, that they were given orders by the fire chief as to how to proceed with the repairs once at the event. As a result, they argue that they were injured while performing a "duty ordered to be performed by a superior or commanding officer"; General Statutes § 7-314 (a); which is one of the enumerated "fire duties" covered under the act. We are not persuaded by these arguments.

We begin by emphasizing that § 7-314a provides the worker's compensation commission with limited jurisdiction over active members of volunteer fire departments. The plaintiffs must prove that the activities they were engaged in at the time they were injured fall within

the statute in order to qualify for the "exceptional benefits" therein. See *Peabody* v. *Shelton*, 16 Conn. Workers' Comp. Rev. Op. 25, 27 (1996), aff'd, 45 Conn. App. 913, 694 A.2d 842, cert. denied, 242 Conn. 906, 697 A.2d 688 (1997). Consequently, volunteer firefighters, unlike other workers, are brought within the scope of the act *only* when they are injured while performing, or training to perform, fire duties as defined in § 7-314 (a). We further note that "[t]he court may not, by construction, supply omissions in a statute or add exceptions or qualifications, merely because it opines that good reason exists for so doing. . . . In such a situation, the remedy lies not with the court but with the General Assembly." (Internal quotation marks omitted.) *Walter* v. *State*, 63 Conn. App. 1, 8, 774 A.2d 1052, cert. denied, 256 Conn. 930, 776 A.2d 1148 (2001). These principles guide our resolution of this appeal.

As a threshold matter, we set forth the standard of review applicable to workers' compensation appeals. "The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . Neither the . . . board nor [an appellate] court has the power to retry facts. . . . Where . . . [a workers' compensation] appeal involves an issue of statutory construction that has not yet been subjected to judicial scrutiny, this court has plenary power to review the administrative decision." (Citations omitted; internal quotation marks omitted.) *Tracy* v. *Scherwitzky Gutter Co.*, 279 Conn. 265, 272, 901 A.2d 1176 (2006). The issue of whether participation in a work night is included within the definition of "any other duty ordered to be performed by a superior or commanding officer in the fire department"; General Statutes § 7-314 (a); is one of first impression. Because

the issue involves statutory construction, our review is plenary.

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Kinsey* v. *Pacific Employers Ins. Co.*, 277 Conn. 398, 405, 891 A.2d 959 (2006).

We must determine whether under the facts in this case, the plaintiffs were "ordered" to attend the work night. The plain meaning of the verb "to order" generally means "to command . . . to require or direct (something) to be done." Webster's Third New International Dictionary. In the present case, the commissioner concluded that the plaintiffs were not injured while engaged in fire duties based on the fact that "[n]o member of the work party was ever *ordered* to be at the work site." He concluded that "[i]t was truly a noble gesture on the part of all who participated in the volunteer effort, but it was voluntary." The plaintiffs argue that the word "order" as used in § 7-314 (a) should be interpreted as meaning "command, bid or prescribe" and that "nothing could be considered an order in a volunteer firefighter context" if the plaintiffs were not ordered to perform a duty in this case. Specifically, they argue that the commissioner's conclusion was improper, given his factual findings that (1) attendance at work nights was a

duty *expected* of all fire company members, and (2) they were given *orders* by the fire chief as to how to perform the repair work once at the event. We are not persuaded that either finding supports the conclusion that the plaintiffs were injured while engaged in a fire duty.

The plaintiffs first argue that they were injured while engaged in a fire duty because attendance at work nights was specifically delineated in the fire company's membership application as a duty *expected* of all volunteer firefighters in the fire company. We disagree. A volunteer firehouse organization's expectation that members attend and participate in work nights does not mean that such an activity is a "fire duty" as defined by the statute.

Section 7-314a (a) specifically conditions eligibility for workers' compensation benefits on the nature of the duties being performed, and § 7-314 (a) provides a list of qualifying activities. "[I]t is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous." (Internal quotation marks omitted.) *Board of Education* v. *State Board of Education*, 278 Conn. 326, 335, 898 A.2d 170 (2006). Because the legislature specifically requires that the activities covered be "fire duties" and enumerates a list of particular duties that are included within the definition of that phrase, we conclude that the legislature did not intend that *all* duties expected of volunteer firefighters be covered under the act. The definition of fire duties under the statute, as opposed to activities firefighters are expected to perform pursuant to the company's application for membership, is determinative of which duties entitle the volunteer firefighters to workers' compensation benefits. Thus, whether the

plaintiffs were *ordered,* meaning commanded or required, to attend and participate in the event is controlling, not whether they were merely *expected* to be there.[5]

In the present case, the commissioner explicitly found that the plaintiffs were not ordered to attend the work night. The commissioner reached this factual determination after hearing testimony[6] that disciplinary action could have resulted had the plaintiffs not attended and notwithstanding his finding that all firefighters in the fire company were expected to attend the work nights. "Once the commissioner makes a factual finding, [the Appellate Court is] bound by that finding if there is evidence in the record to support it." (Internal quotation marks omitted.) *Krol* v. *A. V. Tuchy, Inc.,* 90 Conn. App. 346, 349, 876 A.2d 597 (2005). Here, the chief of the fire company indicated in a written statement that "[participation in the event] was all voluntary, at no time were the men who showed up ordered to be there. . . . My understanding was that no one felt obligated to do it. Again, I never told any of the volunteers they had to be there." He further wrote that "the Board of Managers have no authority to order volunteers to do anything. The only place we can order someone is at the scene of an emergency." Therefore, we must defer to the commissioner's factual finding that the plaintiffs were never *ordered* to attend the work night.

---

[5] The plaintiffs argue that given that they were volunteers, the expectation that they attend the activity is the equivalent of being required or commanded to be there. Although this argument has a certain practical appeal, we reject it because there is a distinction between an expectation and a command.

[6] The plaintiffs mistakenly assert in their brief that the commissioner "found . . . that the Germantown volunteers could be subject to discipline for failing to attend work parties." After reviewing the record, we conclude that the commissioner made no such finding but rather merely noted that "James LaClair, vice chairman of the board of managers of the Germantown Hose Company, stated that active members were obligated to attend work [nights] . . . unless the member's primary job or some family obligation prevented their attending."

We next address the claim that the plaintiffs should be entitled to benefits because they received orders or directions from the chief of the fire company at the time they were making repairs. We are not persuaded that this factual finding compels the conclusion that the plaintiffs were injured while performing a duty ordered to be performed by a superior or commanding officer. The commissioner found that the board of managers organized the event and invited the plaintiffs to attend. He further found that the board of managers had no authority over the members of the fire company, as it was solely responsible for the administrative and financial functions of the station house. The plaintiffs in the present case do not contend that the chief ordered them to attend and participate in the work night, just that they were ordered as to how to go about the work once they had volunteered. We note, as emphasized by the board, that there is a clear distinction between initially being ordered to participate in an activity and receiving orders or directions, having already volunteered.[7]

Thus, we conclude that the plain and unambiguous meaning of the phrase "any other duty ordered to be performed by a superior or commanding officer in the fire department"; General Statutes § 7-314 (a); does not include the plaintiffs' voluntary participation in a work night organized by the administrative body of the firehouse. We agree with the conclusion of the commissioner and the board that the plaintiffs were not injured while engaged in "fire duties" as defined by § 7-314 (a).[8]

---

[7] Likewise, we do not believe that the commissioner's conclusion that the orders or directions given by the chief of the department at the work site were "no more nor less than what a project manager or foreman would do on any construction job" undermines his conclusion that the plaintiffs were not ordered to attend the event.

[8] The plaintiffs argue that in affirming the commissioner's conclusion, the board reached an irrational and inconsistent result in light of its decision in *Rothholz* v. *Chesterfield Fire Co.*, 4827 CRB-2-04-7 (August 12, 2005). In that case, the board concluded that the president of a volunteer fire company was engaged in "any other duty ordered to be performed by a superior or

The plaintiffs are consequently not entitled to benefits under the act. We recognize the important service provided by volunteer firefighters and share the commissioner's view that the conclusion he reached in this case is unfortunate. For the reasons stated previously, we conclude, however, that this result is compelled by the facts and the law.

The decision of the workers' compensation review board is affirmed.

In this opinion McLACHLAN, J., concurred.

GRUENDEL, J., concurring. The majority accurately frames the issue in the present appeal as whether the participation by the plaintiff volunteer firefighters Douglas Evanuska and Paul Williams in the work night constitutes a duty "ordered to be performed by a superior or commanding officer in the fire department . . . ." General Statutes § 7-314 (a). Because the conclusion of the workers' compensation commissioner (commissioner) that no superior or commanding officer of the plaintiffs ordered their participation in the work night finds support in the record, I agree with the majority.

I write separately, however, to emphasize that the commissioner's factual findings are inconsistent. The commissioner first found that "[n]o one was *ordered* to be at the work [night]." (Emphasis in original.) To order is, as the majority notes, to require or direct something to be done. The plaintiffs steadfastly have maintained that their participation in the work night

commanding officer in the fire department" when he injured his back while moving a file cabinet. Id. The board's conclusion in *Rothholz* has no bearing on our resolution of the present appeal as "[i]t is axiomatic that this court is not bound by the decisions of the compensation review board." *Schreck v. Stamford*, 72 Conn. App. 497, 501 n.2, 805 A.2d 776 (2002). We also note that *Rothholz* was not challenged on appeal by the parties in that case.

was required. That contention is supported by the commissioner's factual findings. Specifically, the commissioner found that (1) "[t]he application for membership in the Germantown Hose Company . . . listed participation in company 'work nights' as a duty expected of a volunteer firefighter," (2) "active members were obligated to attend work [nights] unless the member's primary job or some family obligation prevented their attending,"[1] (3) "disciplinary action could be taken against active members for their failure to appear at work [nights]," (4) superior or commanding officers were "in charge of work [nights] in order to reinforce the chain of command in place when fighting fires," and (5) consistent with that protocol, Karl Leach, chief of the Germantown hose company, "gave direction or orders to the members of the work [night] as to just what he wanted them to do . . . ."

The majority reconciles the incongruity between those findings and the commissioner's conclusion that "[n]o member of the work [night] was ever ordered to be at the work site" by stating that there is "a distinction between an expectation and a command." Footnote 5 of the majority opinion. To my mind, the commissioner's factual findings indicate that, although the chief of the hose company never expressly commanded their participation, the plaintiffs and other members nevertheless were required to take part in work nights if they wanted to remain with the hose company. In the face of that

---

[1] The majority opinion discounts that finding, stating that the commissioner "merely noted that James LaClair, vice chairman of the board of managers of the Germantown Hose Company," made such a statement. "It is the power and the duty of the commissioner, as the trier of fact, to determine the facts. . . . [T]he commissioner is the sole arbiter of the weight of the evidence and the credibility of witnesses . . . ." (Internal quotation marks omitted.) *Brinson* v. *Finlay Bros. Printing Co.*, 77 Conn. App. 319, 323, 823 A.2d 1223 (2003). On page two of his memorandum of decision, the commissioner included the aforementioned statement as his ninth factual finding.

reality, the argument that the participation merely was expected fails.

At the same time, the record includes the written statement of the chief of the hose company, in which he avowed that participation in the work night was voluntary and not ordered. Although the commissioner did not reference that statement in his findings, he did find that "[n]o one was ordered to be at the work [night]." In defining the term "fire duties," § 7-314 (a) includes any "duty ordered to be performed by a superior or commanding officer in the fire department . . . ." As the sole arbiter of the weight of the evidence and the credibility of witnesses, the commissioner was free to credit the chief's representation, and, thus, the ultimate conclusion that the plaintiffs were not ordered by a superior or commanding officer to participate in the work night plainly is supported by the record before us. We therefore are bound by that finding. See *Dixon* v. *United Illuminating Co.*, 57 Conn. App. 51, 63, 748 A.2d 300, cert. denied, 253 Conn. 908, 753 A.2d 940 (2000).

The commissioner's factual findings nevertheless indicate that the plaintiffs' participation was required as a condition of their employment with the hose company. The record suggests that members who refused to participate in the work nights did so at their own peril.[2]

As our Supreme Court has observed, "this state has an interest in compensating injured employees to the fullest extent possible . . . ." (Internal quotation marks omitted.) *Burse* v. *American International Airways, Inc.*, 262 Conn. 31, 37, 808 A.2d 672 (2002). This

---

[2] In addition to the commissioner's finding that members of the hose company were obligated to participate and faced possible disciplinary action for their refusal to do so, the decision of the workers' compensation review board states that "the membership of a volunteer might be reevaluated if said person continued to miss work parties."

jurist certainly appreciates the argument of the plaintiffs in the present case. It is not for this court, however, to determine whether the scope of § 7-314 should be expanded to encompass requirements of employment placed on members of volunteer fire departments, such as participation in work nights. That task belongs to the General Assembly alone. For the protections of General Statutes § 7-314a to apply to the present situation, Connecticut law requires an order by a superior or commanding officer. The record in this case reveals no such order. For that reason, I respectfully concur with the majority opinion.