# DOUGLAS EVANUSKA ET AL. *v.* CITY OF DANBURY ET AL.

## (SC 17850)

Rogers, C. J., and Norcott, Katz, Vertefeuille and Schaller, Js.

Argued October 15, 2007—officially released February 5, 2008

*Jonathan H. Dodd,* for the appellants (named plaintiff et al.).

*Colette S. Griffin,* with whom was *Samuel I. Reich,* for the appellees (defendants).

*Opinion*

KATZ, J. The sole issue in this certified appeal is whether the Appellate Court properly affirmed the decision of the workers' compensation review board (board), affirming the decision of the workers' compensation commissioner for the seventh district (commissioner), who had concluded that the plaintiffs Douglas Evanuska and Paul Williams, two volunteer firefighters

for the defendant city of Danbury,[1] were not engaged in " 'fire duties,' " as defined in General Statutes § 7-314 (a),[2] when they were injured while repairing the station house roof. See *Evanuska* v. *Danbury*, 281 Conn. 923, 918 A.2d 270 (2007). The plaintiffs claim that they are entitled to compensation because they were injured while performing actions that fell within the definition of " 'fire duties' " as "any other duty ordered to be performed by a superior or commanding officer in the fire department . . . ." General Statutes § 7-314 (a). We conclude that the commissioner applied an incorrect interpretation of the statute to the facts at hand, and, therefore, the case must be remanded to the commissioner. Accordingly, we reverse the Appellate Court's judgment.

By way of background, we note the following undisputed facts. The Danbury fire department is comprised of two components: a paid fire department and volun-

---

[1] The commissioner's decision also addressed a claim by a third volunteer firefighter, David Evanuska, alleging injuries arising from the same incident. The commissioner dismissed David Evanuska's claim for failure to adduce evidence of any injury. David Evanuska apparently withdrew from the appeal from the commissioner's decision and is not a party to this appeal. References herein to the plaintiffs are to Douglas Evanuska and Paul Williams.

In addition to the city of Danbury, its workers' compensation provider, Connecticut Interlocal Risk Management Agency, also is a defendant in this case.

[2] General Statutes § 7-314 (a) provides in relevant part: "Wherever used in this section and sections 7-314a and 7-322a . . . the term 'fire duties' includes duties performed while at fires, while answering alarms of fire, while answering calls for mutual aid assistance, while returning from calls for mutual aid assistance, while directly returning from fires, while at fire drills or parades, while going directly to or returning directly from fire drills or parades, while at tests or trials of any apparatus or equipment normally used by the fire department, while going directly to or returning directly from such tests or trials, while instructing or being instructed in fire duties, while answering or returning from ambulance calls where the ambulance service is part of the fire service, while answering or returning from fire department emergency calls and *any other duty ordered to be performed by a superior or commanding officer in the fire department* . . . ." (Emphasis added.)

teer fire companies. Danbury Code § 8-1 (b). There are twelve volunteer fire companies, each of which consists of such officers and firefighters as prescribed by that company's charter or bylaws. Id., § 8-3. The Germantown hose company (fire company), housed in the Germantown firehouse in Danbury, is one such volunteer company. Id. It has a two part management structure: a board of managers and a set of officers (chief, assistant chief, captain and lieutenants). The board of managers is responsible for the administrative and business functions of the fire company. The board of managers has no responsibility for the fire fighting activities of the fire company; the officers are responsible for overseeing those activities.

The commissioner's decision reflects the following findings of fact. The roof facade of the Germantown firehouse was in need of repair. In October, 2002, at the regular monthly meeting of the fire company's board of managers, "a 'work party' . . . was invited to volunteer their time and to assemble on [Friday] October 18, and [Saturday] October 19, 2002. No one was ordered to be at the work party." On October 19, 2002, the plaintiffs . . . were active Germantown volunteer firefighters. On that day, while the plaintiffs, "both of whom had agreed to donate their time, were on a scaffold erected for the purpose of facilitating the repairs to the roof shingles, the scaffold collapsed causing the two men to fall to the ground some [fifteen] feet below . . . . Both suffered serious injuries requiring hospital and medical treatment."

"James LaClair, [vice chairman of the fire company's board of managers at the time of the incident] stated that active members were obligated to attend work parties such as the one in effect on October 19, 2002, unless the member's primary job or some family obligation prevented their attending. . . . The application for membership in the [fire company] . . . listed participa-

tion in company 'work nights' as a duty expected of a volunteer firefighter.[3] . . . LaClair stated that disciplinary action could be taken against active members for their failure to appear at work parties. . . . The [b]oard of [m]anagers required that [fire fighting] officers be in charge of work parties in order to reinforce the chain of command in place when fighting fires. . . . Karl Leach [chief of the fire company at the time of the incident] gave direction[s] or orders to the members of the work party as to just what he wanted them to do with regard to the re-roofing of the building, notwithstanding that all volunteers of the work party each had a working knowledge, if not an expertise, in construction or in a related field."

In light of, or despite, these facts, the commissioner determined that the plaintiffs had failed to prove that they sustained their injuries while performing " 'fire duties,' " as defined by § 7-314 (a), the necessary predicate for compensation under General Statutes § 7-314a (a).[4] The commissioner concluded that, "[w]hile the

[3] The fire company's application for active membership provides: "DUTIES EXPECTED OF A VOLUNTEER FIREMAN IN THIS COMPANY:

"1. Make every effort to answer all fire alarms.

"2. Attend training sessions when held.

"3. Participate in company functions such as work nights, company fund raisers, and attend wakes of deceased members of the company or of their immediate families.

"4. Attend monthly meetings of the company on the first Thursday of each month, unless excused by an officer of the company.

"5. Annual dues of active members shall be $5.00. An application fee of $5.00 shall be submitted at the time of the application.

"6. If the applicant, after six months, does not comply with these regulations, [t]he applicant shall be dismissed from this company and forfeit the application fee.

"The applicant shall be aware that it is the policy of this company to conduct random drug testing.

"By signing this application, the applicant hereby agrees to abide by the above regulations and may be required to take a drug test on a random basis. . . . "

[4] General Statutes § 7-314a provides: "(a) Except as provided in subsections (e) and (f) of this section, active members of volunteer fire departments and active members of organizations certified as a volunteer ambulance

[plaintiffs] allege and rely on the sentence of [§] 7-314 (a) 'any other duty ordered to be performed by a superior or commanding officer in the fire department' as the basis for establishing a claim, they fail to produce

service in accordance with section 19a-180 shall be construed to be employees of the municipality for the benefit of which volunteer fire services or such ambulance services are rendered *while in training or engaged in volunteer fire duty* or such ambulance service and shall be subject to the jurisdiction of the Workers' Compensation Commission and shall be compensated in accordance with the provisions of chapter 568 for death, disability or injury incurred while in training for or engaged in volunteer fire duty or such ambulance service.

"(b) For the purpose of this section, the average weekly wage of a volunteer fireman or volunteer ambulance service member shall be construed to be the average production wage in the state as determined by the Labor Commissioner under the provisions of section 31-309.

"(c) For the purpose of this section, there shall be no prorating of compensation benefits because of other employment by a volunteer fireman or volunteer ambulance service provider.

"(d) For the purpose of adjudication of claims for the payment of benefits under the provisions of chapter 568, any condition of impairment of health occurring to an active member of a volunteer fire department or organization certified as a volunteer ambulance service in accordance with section 19a-180 while such member is in training for or engaged in volunteer fire duty or such ambulance service, caused by hypertension or heart disease resulting in death or temporary or permanent total or partial disability, shall be presumed to have been suffered in the line of duty and within the scope of his employment, provided such member had previously successfully passed a physical examination by a licensed physician appointed by such department or ambulance service which examination failed to reveal any evidence of such condition.

"(e) Any member of a volunteer fire company or department or organization certified as a volunteer ambulance service in accordance with section 19a-180 performing fire duties or such ambulance service pursuant to a mutual aid understanding between municipalities shall be entitled to all benefits pursuant to this section and shall be construed to be an employee of the municipality in which his fire company or department or such ambulance service is located.

"(f) Any member of a volunteer fire company or department and any person summoned by the State Forest Fire Warden or by any state forest fire personnel or district or deputy fire warden under the supervision of the State Forest Fire Warden pursuant to section 23-37, who performs fire duties under the direction of such personnel or warden pursuant to section 23-37, shall be construed to be an employee of the state for the purpose of receiving compensation in accordance with the provisions of chapter 568 for death, disability or injury incurred while performing such fire duties under such direction." (Emphasis added.)

evidence that this statute was intended to cover injuries sustained in other than training or firefighting situations. . . . No member of the work party was ever ordered to be at the work site. It was truly a noble gesture on the part of all who participated in the volunteer effort, but it was voluntary. . . . The 'orders' or 'directions' given by [Leach] at the work site were no more nor less than what a project manager or foreman would do on any construction job." The commissioner therefore dismissed the plaintiffs' claims, and the plaintiffs appealed from the decision to the board, which affirmed the commissioner's decision.

Pursuant to General Statutes § 31-301b, the plaintiffs then appealed from the board's decision to the Appellate Court, which affirmed the decision. *Evanuska* v. *Danbury*, 99 Conn. App. 42, 912 A.2d 545 (2007). The Appellate Court reasoned that, "[b]ecause the legislature specifically requires that the activities covered be 'fire duties' and enumerates a list of particular duties that are included within the definition of that phrase, we conclude that the legislature did not intend that all duties expected of volunteer firefighters be covered under the [Workers' Compensation Act, General Statutes § 31-275 et seq.]. The definition of fire duties under [§ 7-314 (a)], as opposed to activities firefighters are expected to perform pursuant to the [fire] company's application for membership, is determinative of which duties entitle the volunteer firefighters to workers' compensation benefits. Thus, whether the plaintiffs were *ordered*, meaning commanded or required, to attend and participate in the event is controlling, not whether they were merely *expected* to be there." (Emphasis in original.) Id., 48–49. The Appellate Court concluded that it was bound by the commissioner's finding that the plaintiffs were not ordered to attend the work party, citing as support for that finding a written statement in the record from Leach that "[participation in the

event] was all voluntary, at no time were the men who showed up ordered to be there. . . . My understanding was that no one felt obligated to do it. Again, I never told any of the volunteers they had to be there. . . . [T]he [b]oard of [m]anagers have no authority to order volunteers to do anything. The only place we can order someone is at the scene of an emergency." (Internal quotation marks omitted.) Id., 49.

Judge Gruendel wrote separately to emphasize that the commissioner's findings were inconsistent with respect to whether the plaintiffs had been ordered to participate in work nights. Id., 51 (*Gruendel, J.*, concurring). He noted: "The majority reconciles the incongruity between those findings and the commissioner's conclusion that '[n]o member of the work [night] was ever ordered to be at the work site' by stating that there is 'a distinction between an expectation and a command.' . . . To my mind, the commissioner's factual findings indicate that, although the chief of the [fire] company never expressly commanded their participation, the plaintiffs and other members nevertheless were required to take part in work nights if they wanted to remain with the [fire] company. In the face of that reality, the argument that the participation merely was expected fails." (Citation omitted.) Id., 52–53 (*Gruendel, J.*, concurring). Judge Gruendel nonetheless agreed that the board's decision should be affirmed in light of the commissioner's finding, which was supported by Leach's statement, that no one had been "ordered" to participate in the work party. Id., 53 (*Gruendel, J.*, concurring).

In their certified appeal to this court, the plaintiffs claim that, because Germantown volunteer firefighters were obligated to participate in work parties, were subject to potential discipline for failing to participate in such activities and were under the direction and supervision of Leach, the fire company's chief, while per-

forming the particular activity at issue here, their actions fell within the definition of " 'fire duties' " as "any other duty ordered to be performed by a superior or commanding officer in the fire department . . . ." General Statutes § 7-314 (a). We conclude that the Appellate Court improperly affirmed the decision of the board because the commissioner applied an incorrect interpretation of § 7-314 (a) to the facts at hand.

It is well settled that "[t]he conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) *Coppola* v. *Logistec Connecticut, Inc.*, 283 Conn. 1, 6, 925 A.2d 257 (2007). "Because the relevant aspects of [§ 7-314 (a)] have been subjected neither to previous judicial scrutiny nor to a time-tested interpretation by the board, [however] we afford no special deference to the [interpretation] of the board. . . . Instead, we exercise the plenary review we otherwise apply to such questions of law." (Citation omitted; internal quotation marks omitted.) *Pizzuto* v. *Commissioner of Mental Retardation*, 283 Conn. 257, 264, 927 A.2d 811 (2007).

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes."[5] (Internal quotation marks omitted.) Id., 264–65.

---

[5] We note that, although § 1-2z precludes the court from resorting to extratextual sources, such as legislative history, if we determine that the statutory text yields an unambiguous meaning, the relevant text of § 7-314

In considering the meaning of the term fire duties, we also must be mindful that the crux of the issue is whether the plaintiffs are entitled to receive compensation under the Workers' Compensation Act. See General Statutes § 7-314a (a). Indeed, General Statutes §§ 7-314a and 7-314b[6] are the only procedural vehicles available

(a) does not yield a clear and unambiguous meaning with respect to the question at hand. There is not, however, any legislative record pertaining to the relevant text, which was enacted in 1941. See General Statutes (Sup. 1941) § 70f ("[t]he term 'performance of fire duties', wherever used in this chapter, shall include duties performed while at fires, while answering alarms of fire, while directly returning from fires, while at fire drills or parades, while at tests or trials of any of the apparatus or equipment normally used by the fire department, while instructing or being instructed in fire duties, while answering or returning from ambulance calls where the ambulance service is part of the fire service, while answering or returning from fire department emergency calls and any other duty which is ordered to be performed by a superior or commanding officer in the fire department").

[6] The text of § 7-314a is set forth in footnote 4 of this opinion. General Statutes § 7-314b provides: "(a) Any active member of a volunteer fire company or department engaged in volunteer fire duties or any active member of an organization certified as a volunteer ambulance service in accordance with section 19a-180 may collect benefits under the provisions of chapter 568 based on the salary of his employment or the amount specified in subsection (b) of section 7-314a, whichever is greater, if said firefighter or volunteer ambulance service provider is injured while engaged in fire duties or volunteer ambulance service.

"(b) As used in this section, the terms 'fire duties' includes duties performed while at fires, answering alarms of fire, answering calls for mutual aid assistance, returning from calls for mutual aid assistance, at fire drills or training exercises, and directly returning from fires, 'active member of a volunteer fire company or department' includes all active members of said fire company or department, fire patrol or fire and police patrol company, whether paid or not paid for their services, 'ambulance service' includes answering alarms, calls for emergency medical service or directly returning from calls for the emergency situations, duties performed while performing transportation or treatment services to patients under emergency conditions, while at any location where emergency medical service is rendered, while engaged in drills or training exercises, while at tests or trials of any apparatus or equipment normally used in the performance of such medical service drills, and 'active member of an organization certified as a volunteer ambulance service in accordance with section 19a-180' includes all active members of said ambulance service whether paid or not paid for their services.

"(c) The provisions of subsection (a) of this section shall only apply if the volunteer firefighter or volunteer ambulance service provider is unable to perform his regular employment duties."

for volunteer firefighters to obtain workers' compensation benefits for injuries sustained while performing fire duties, even when such injuries prevent them from performing at their regular, paid employment. Therefore, just as we do when construing the predicates to compensation for claims brought directly under the Workers' Compensation Act, we similarly construe any ambiguities in the predicate to compensation under § 7-314 (a) liberally, mindful of the statute's remedial purpose. See *Gartrell* v. *Dept. of Correction*, 259 Conn. 29, 41, 787 A.2d 541 (2002) (citing humanitarian purpose and broad construction of workers' compensation scheme in context of appeal addressing whether injury arose out of employment); *Szudora* v. *Fairfield*, 214 Conn. 552, 557, 573 A.2d 1 (1990) (noting with respect to General Statutes §§ 7-433c and 7-433b [b], which provide survivors' benefits and heart and hypertension disease benefits for police officers and firefighters, "[w]e can . . . look for guidance to the proposition that all workers' compensation legislation, because of its remedial nature, should be broadly construed in favor of disabled employees").

In order to determine whether the facts found by the commissioner resulted from an incorrect application of the law to the subordinate facts, we first turn to the meaning of the phrase "any other duty ordered to be performed by a superior or commanding officer . . . ." General Statutes § 7-314 (a). We recognize, as did the Appellate Court, that the pertinent terms are not defined by statute. See *Evanuska* v. *Danbury*, supra, 99 Conn. App. 46–47. Accordingly, we turn to the common meaning of those terms, as directed by General Statutes § 1-1 (a). See *Hummel* v. *Marten Transport, Ltd.*, 282 Conn. 477, 498, 923 A.2d 657 (2007).

A "duty" is defined as "conduct due to . . . superiors . . . obligatory tasks, conduct, service, or functions that arise from one's position"; Webster's Ninth New

Collegiate Dictionary (1983); or "[a]n act or a course of action that is exacted of one by position, social custom, law or religion . . . [a] service assigned or demanded of one . . . ." American Heritage Dictionary (New College Ed. 1978). To "order" means to "give a command or instruction that (something) be done . . . ." American Heritage Dictionary, supra; see also Webster's Ninth New Collegiate Dictionary, supra ("to give an order for . . . COMMAND"). A "superior" is a person "higher in rank, station, or authority: a superior officer"; American Heritage Dictionary, supra; accord Webster's Ninth New Collegiate Dictionary, supra ("of higher rank, quality or importance"). To be an officer in "command" means "[t]o direct with authority; give orders to"; American Heritage Dictionary, supra; or "to have or exercise direct authority: GOVERN . . . ." Webster's Ninth New Collegiate Dictionary, supra. Thus, in order to obtain compensation, the plaintiffs must have had an obligation, due to their position as volunteer firefighters, to perform firehouse repairs; they must have been commanded or instructed to make the repairs; and that instruction must have come from a person or persons of higher rank or authority.

In contrast to this inquiry, the commissioner indicated that he construed the statute to require that the injuries must have been sustained in a training or fire fighting situation, stating: "While the [plaintiffs] allege and rely on the sentence of [§] 7-314 (a) 'any other duty ordered to be performed by a superior or commanding officer in the fire department' as the basis for establishing a claim, they fail to produce evidence that this statute was intended to cover injuries sustained in other than training or [fire fighting] situations." Indeed, the commissioner determined that the statute must be read narrowly and equated " 'fire duties' " with fire fighting: "[Section] 7-314 (a) is a very specific statute enacted by the legislature to provide relief from a shortfall wherein

volunteer firefighters had previously been denied the benefits of [the Workers' Compensation Act] if they suffered an injury while performing volunteer [*fire fighting*] *services* to the municipality. Its provisions must be adhered to without expansion or interpretation." (Emphasis added.) This limited construction, however, is unsupported by the text of the statute.[7]

Had the legislature intended the construction applied by the commissioner, it expressly could have limited the phrase included in § 7-314 (a)—"any other duty ordered to be performed"—by adding the language *"while fire fighting or training."* Indeed, such duties would appear to be subsumed within the enumerated fire duties of "duties performed while at fires, while answering alarms of fire, while answering calls for mutual aid assistance, while returning from calls for mutual aid assistance, while directly returning from fires, while at fire drills . . . [or] while instructing or being instructed in fire duties . . . ." General Statutes § 7-314 (a). To the extent that some training exercise arguably might fall outside the scope of fire drills or instruction in fire duties, § 7-314a (a) already addresses any such situation by providing compensation for injuries "incurred while in training for . . . volunteer fire duty . . . ." Thus, the commissioner's construction fails to give independent meaning to the phrase at issue— "any other duty ordered to be performed by a superior or commanding officer," a result that we cannot counte-

---

[7] The commissioner did state as his final conclusion: "The unfortunate conclusion arrived at herein is that the [plaintiffs] were not injured while in training or while actively engaged in fire fighting, *were not engaged in any other of the activities set forth in [§] 7-314 (a)* and, hence, do not qualify for the benefits of [the Workers' Compensation Act]." (Emphasis added.) In light of the conclusions that preceded this statement, we construe the emphasized portion of the commissioner's statement to refer to the enumerated fire duties other than those related to fire fighting and training, provisions on which the plaintiffs did not rely, rather than the catch-all provision of "any other duty . . . ."

nance. See *Interlude, Inc.* v. *Skurat*, 266 Conn. 130, 147, 831 A.2d 235 (2003) ("[w]e generally reject a construction that renders any portion of a statute superfluous"). We also note that the legislature could have limited the scope of the phrase by providing that fire duties include any other duty *"performed in connection with the aforementioned duties"* or any other duty *"related to the aforementioned duties."* It did not do so. Rather, the legislature added a catch-all provision for "any other duty" to the already expansive list of "fire duties" in § 7-314 (a), limited only by the requirement that a superior or commanding officer order the duty to be performed.

Notable by contrast, one of the two possible procedural routes to obtain workers' compensation benefits for volunteer firefighters has a narrower definition of " 'fire duties' " that is more in concert with the commissioner's construction. Under § 7-314b, if active volunteer firefighters both have been injured while performing "fire duties" *and* are unable to perform regular employment duties, they may collect workers' compensation benefits based on either the salary of their employment or the amount that otherwise applies under § 7-314a, the average production wage in the state, whichever is greater. See footnotes 4 and 6 of this opinion for the full text of §§ 7-314a and 7-314b. " '[F]ire duties' " under § 7-314b (b) is defined as "duties performed while at fires, answering alarms of fire, answering calls for mutual aid assistance, returning from calls for mutual aid assistance, at fire drills or training exercises, and directly returning from fires . . . ." The legislature's failure similarly to limit the definition of "fire duties" under § 7-314 (a) when they enacted § 7-314b in 1995; see Public Acts 1995, No. 95-243, § 2; reinforces our conclusion that it did not intend for the scope of § 7-314 (a) to be limited to fire fighting or training situations.

We emphasize, however, that a duty ordered to be performed under § 7-314 (a) necessarily is limited to tasks related to the job of being a volunteer *firefighter* both because a superior or commanding officer would lack authority (and hence the requisite superior or commanding status) to issue orders unrelated to the performance of that job and because a firefighter would lack any duty to perform tasks unrelated to his or her position as a firefighter. Thus, for example, if Leach had told the plaintiffs that they had to fix the roof on his house, that instruction could not constitute a duty ordered by the plaintiffs' commanding officer because Leach would have had no authority to order the plaintiffs to do so and they would have had no duty to fix Leach's roof. Tasks that a volunteer firefighter performs because of his or her position are not necessarily limited, however, to fire fighting or training. It is common knowledge that volunteer firefighters have been called on to perform community service calls, such as rescuing a cat stranded in a tree or providing fire safety lessons at a local school or to participate in fundraising activities necessary to support firehouse needs, to name but a few tasks that firefighters might be obligated to perform.[8]

Indeed, as recognized in other jurisdictions, repairs and maintenance of the firehouse reasonably may be considered within the scope of a firefighter's duties. See, e.g., N.Y. Vol. Fire. Ben. Law § 3 (3) (McKinney Sup. 2008) ("'[l]ine of duty' means the performance by a volunteer firefighter as a volunteer firefighter of the duties and activities described in subdivision one of section five of this chapter"); N.Y. Vol. Fire. Ben. Law § 5 (1) (g) (McKinney Sup. 2008) (providing compensation for injuries sustained by volunteer firefighters

---

[8] Whether any such undertaking would constitute a " 'fire duty' " under § 7-314 (a), however, necessarily would depend on the facts of each case establishing a duty ordered to be performed by a superior or commanding officer.

"[w]hile, within the state and pursuant to orders or authorization, working in connection with the construction, testing, inspection, repair or maintenance of . . . the firehouse and the fixtures, furnishings and equipment thereof"); 77 Pa. Cons. Stat. § 1031 (a) (1) (2002) (providing supplemental definition of employee under Pennsylvania's workers' compensation statute to include "members of volunteer fire departments or volunteer fire companies . . . who shall be entitled to receive compensation in case of injuries received while actively engaged as firemen . . . or while repairing or doing other work about or on the fire apparatus or buildings and grounds of the fire company or fire department upon the authorization of the chief of the fire company or fire department or other person in charge"). Undoubtedly, the legislature expressly could have listed firehouse maintenance as a fire duty, but it did not need to do so in light of its choice of the more expansive phrase "any other duty ordered to be performed . . . ." General Statutes § 7-314 (a).

Even if we were to view the catch-all provision to require activities of like kind to the more specific enumerated activities; see *24 Leggett Street Ltd. Partnership* v. *Beacon Industries, Inc.*, 239 Conn. 284, 297, 685 A.2d 305 (1996); that process would not yield a result limiting fire duties exclusively to fire fighting or training situations. Specifically, the legislature's inclusion of participation in parades as a fire duty is evidence that it intended for compensation to extend beyond injuries sustained in fire fighting or training situations. In the absence of any textual or extratextual evidence that the legislature intended to limit the terms under which compensation is available to volunteer firefighters other than to require that their injury was sustained when performing a duty ordered to be performed by a superior or commanding officer; see footnote 5 of this opinion; we lack authority to engraft such a limitation. See

*Laliberte* v. *United Security, Inc.*, 261 Conn. 181, 186, 801 A.2d 783 (2002) ("[i]n the absence of any indication of the legislature's intent concerning this issue, we cannot engraft language onto the statute"); *Red Hill Coalition, Inc.* v. *Town Plan & Zoning Commission*, 212 Conn. 727, 736, 563 A.2d 1347 (1989) ("[a]bsent such language by the legislature, this court cannot 'engraft amendments into the statutory language' ").

Therefore, the commissioner improperly limited the meaning of "any other duty ordered to be performed by a superior or commanding officer in the fire department" under § 7-314 (a) to fire fighting or training situations. We are mindful that the commissioner expressly found that "[n]o one was ordered to be at the work party"; that the plaintiffs "had agreed to donate their time"; and that participation in the work party was "voluntary." We cannot ignore the fact, however, that the commissioner made these findings after viewing the evidence through an incorrect legal lens. Facts cannot stand if "they result from an incorrect application of the law to the subordinate facts . . . ." (Internal quotation marks omitted.) *Coppola* v. *Logistec Connecticut, Inc.*, supra, 283 Conn. 6. In light of the commissioner's improper conclusion that " 'fire duties' " under § 7-314 (a) means fire fighting or training situations, it appears that he concluded that the plaintiffs could not, as a matter of law, have been ordered to perform a duty within the meaning of § 7-314 (a) because the roof repair was neither of those activities. Thus, the commissioner may not have credited testimony simply because it did not tend to prove that the plaintiffs were engaged in fire fighting or training activities.

For example, the commissioner noted that LaClair had "stated" that the board of managers required active firefighters to attend work parties and that disciplinary action could be taken against the plaintiffs for failing to appear at work parties. The commissioner neither

expressly credited nor discredited that testimony; rather, he expressly found that the board of managers "has no responsibility for *fire fighting* activities of the fire company." (Emphasis added.) Thus, it appears that the commissioner may not have considered whether any actions by the board of managers could have given rise to a "duty ordered to be performed by a superior or commanding officer" under § 7-314 (a) simply because that body had no authority regarding fire fighting.

The commissioner did make a finding crediting LaClair's testimony that "[t]he [b]oard of [m]anagers required that [fire fighting] officers be in charge of work parties in order to reinforce the chain of command," but then he further concluded that the orders given by Leach at the work party "were no more nor less than what a project manager or foreman would do on any construction job." Although Leach's orders may have been of the same ilk as those that a project manager might issue, the pertinent questions in applying § 7-314 (a) were whether Leach was issuing such orders or instructions because of his position as a superior or commanding officer and whether the plaintiffs would have been obligated to obey orders or instructions issued due to Leach's position. To the extent that the commissioner suggested that a dispositive fact is whether persons other than firefighters could perform the task, we reject such a view because the same could be said for many activities performed by firefighters.[9]

---

[9] The board appeared to rely on such reasoning, distinguishing the present case from its decision in *Rothholz* v. *Chesterfield Fire Co.*, 4827 CRB-2-04-7 (August 12, 2005), wherein the claimant, who was the president of the Chesterfield fire company and who handled administrative matters, had been injured when moving a file cabinet at the fire company's office. In *Rothholz*, the board had affirmed the workers' compensation commissioner's decision concluding that the injury was compensable because the claimant's injury had resulted from a "duty ordered to be performed by a superior or commanding officer . . . ." General Statutes § 7-314 (a). Distinguishing *Rothholz*, the board noted in the present case: "Realistically, one would not expect [the] office duties [in *Rothholz*] to be outsourced. In contrast, it was beyond the job of the [plaintiffs in the present case] to perform structural

In light of our conclusion that the commissioner applied an improper interpretation of § 7-314 (a) to the evidence before him, the commissioner must review the evidence anew, applying the proper interpretation. See *Gil* v. *Courthouse One*, 239 Conn. 676, 693, 687 A.2d 146 (1997); *Shimko* v. *Ferro Corp.*, 40 Conn. App. 409, 415, 671 A.2d 376, cert. denied, 236 Conn. 916, 673 A.2d 1143 (1996). We caution the commissioner in reviewing the evidence de novo that he should apply the catch-all provision "any other duty ordered to be performed" mindful of the unique nature, in the realm of workers' compensation, of volunteer fire fighting. Every time a volunteer firefighter responds to a fire or emergency call or undertakes any action in his or her capacity as a firefighter, he or she is volunteering or donating time. Unlike a paid employee, a volunteer firefighter cannot be docked pay or deprived of employment benefits if he or she fails to meet attendance or other job requirements. Rather, as the evidence in the present case suggests, firefighters may be subject to disciplinary action or dismissal for failure to meet such requirements. Indeed, the Germantown fire company's application indicates that a volunteer firefighter cannot be *required* to attend any specific activity, including answering a fire call, because, for example, that task may conflict with regular employment obligations. Thus, when applying § 7-314 (a), the commissioner carefully must assess testimony stating that volunteer firefighters "donated" or "volunteered" time or were "ordered" to attend an event. For example, although Leach indicated that he construes the term "ordered" to encompass only commands issued at the scene of a fire, the commissioner was bound to apply a broader meaning of "ordered" under § 7-314 (a), because, as we previously have explained herein, the specifically

---

repairs at the firehouse as part of their [fire fighting] duties." *Evanuska* v. *Danbury*, 4900 CRB-7-04-12 (December 19, 2005).

enumerated fire duty of "duties performed while at fires" already encompasses the narrow classification of orders to which Leach referred.[10] Therefore, when examining the record to determine if a "duty [was] ordered to be performed by a superior or commanding officer" pursuant to § 7-314 (a), the commissioner should consider whether the firefighter could decline the assignment without cause and without the possibility of adverse consequences rather than whether the firefighter "volunteered" or "donated" time. Accordingly, we conclude that the Appellate Court improperly concluded that the board's decision affirming the commissioner's decision dismissing the plaintiffs' claims must be affirmed.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the decision of the board and to order the board to remand the case to the commissioner for further proceedings in accordance with this opinion.

In this opinion the other justices concurred.

---

[10] Given the contextual nature of such terms and the commissioner's failure to apply the proper interpretation of the statutory provision at issue in this case to the evidence presented, we cannot rely on isolated portions of Leach's statements asserting that he never had "ordered" anyone to attend the work party as a basis to support the commissioner's decision. Indeed, in light of the fact that there were inconsistencies between Leach's deposition testimony and his written statement, which the defendant acknowledged to the commissioner, the commissioner may have reconciled these inconsistencies differently had he applied the proper interpretation of § 7-314 (a) and viewed testimony using terms such as "volunteered," "donated" and "ordered" through a more contextual lens.