******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# MICHAEL A. FIANO *v.* OLD SAYBROOK FIRE COMPANY NO. 1, INC., ET AL.
## (AC 39321)

Keller, Bright and Mihalakos, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendants, S, F Co. and the town of Old Saybrook, for negligence in connection with personal injuries he sustained when a motor vehicle operated by S struck the motor vehicle operated by the plaintiff. The plaintiff alleged that the accident occurred when S, who worked as a volunteer firefighter for F Co., moved from a stopped position on the property of F Co. onto a public road. F Co. and the town filed a motion for summary judgment as to the claims raised against them on the ground that they could not be held vicariously liable because S was not acting within the scope of his employment or official duties at the time of the accident. After the trial court denied the motion for summary judgment, it granted F Co.'s motion to reargue or reconsider the motion for summary judgment and, without holding a hearing, granted the motion for summary judgment. On appeal, the plaintiff claimed, inter alia, that it was procedurally improper for the trial court to grant F Co.'s motion to reargue or reconsider the motion for summary judgment because the motion was untimely and did not present new arguments, and that once the trial court decided to permit reargument, it should have held a hearing prior to reconsidering its earlier ruling and granting the motion for summary judgment. *Held*:

1. Although the trial court abused its discretion by granting F Co.'s untimely motion to reargue or reconsider without holding a hearing before granting the motion for summary judgement, the plaintiff failed to demonstrate that the error was harmful: because F Co.'s motion to reargue or reconsider did not present any new facts or legal arguments that had not already been raised in support of the motion for summary judgment, the plaintiff had been provided ample opportunity to respond to the arguments and documentation on which the court relied in granting the motion for summary judgment in his memorandum of law in support of the objection to the motion for summary judgment, in his response to the reply memorandum filed by F Co. and the town, and at oral argument on the motion for summary judgment, and the plaintiff failed to suggest anything, by way of argument, documentation or otherwise, that he would or could have adduced in response to the motion for summary judgment to undermine the propriety of the court's rulings on it; furthermore, the trial court had the inherent authority to grant the motion for summary judgment sua sponte, as courts can reconsider a past decision in order to correct mistakes in prior judgments, the court had jurisdiction when it ruled on the motion to reargue or reconsider and did not grant the motion for summary judgment on grounds that F Co. and the town previously had never presented, and reversing the trial court's judgment would have hindered the interests of judicial economy.

2. The plaintiff could not prevail on his claim that the trial court erred by rendering summary judgment in favor of F Co. and the town on the plaintiff's vicarious liability claims because there was a genuine issue of material fact as to whether S was acting in the course of his employment or official duties at the time of the accident: S was in the process of leaving to attend to his personal affairs at the time of the accident, it was inconsequential that he was still on F Co.'s property because he was no longer furthering the interests of F Co. or the town at that time, and although the plaintiff provided grounds to conclude that F Co. and the town may have benefitted from S's presence at F Co.'s property, the plaintiff did not show how that provided a basis to determine that F Co. and the town benefitted from S's departure from F Co.'s property, which was when S's allegedly negligent conduct occurred; moreover, although control was an essential element in determining whether an agency relationship existed, the plaintiff did not provide any authority that F Co., as a fire company, exercised control over S, a volunteer

member, when S used his personal vehicle for a personal matter because he used that same vehicle at other times, under the supervision of F Co., in his capacity as a volunteer firefighter, and this court declined to adopt such a rule; furthermore, although, pursuant to statute (§ 31-275), professional firefighters are considered to be in the course of their employment for workers' compensation purposes while going to or coming from work, volunteer firefighters, such as S, are entitled to workers' compensation only for injuries incurred while in training or engaged in volunteer fire duty, S's conduct in departing the firehouse to go home to attend to a personal matter did not encompass such fire duties, and even if S's activities were deemed to be fire duties, the plaintiff provided no authority that the workers' compensation statutes provide guidance for determining when volunteer firefighters are acting within the scope of their employment for the purpose of vicarious liability.

Argued November 14, 2017—officially released April 10, 2018

*Procedural History*

Action to recover damages for the defendants' negligence brought to the Superior Court in the judicial district of Middlesex, where the court, *Aurigemma, J.*, denied the motion for partial summary judgment filed by the named defendant et al.; thereafter, the court granted the named defendant's motion to reargue and for reconsideration; subsequently, the court granted the motion for partial summary judgment filed by the named defendant et al. and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*James J. Healy*, with whom was *Douglas P. Mahoney*, for the appellant (plaintiff).

*Michael O'Connor*, for the appellees (named defendant et al.).

*Opinion*

KELLER, J. In this negligence action arising from a motor vehicle accident between the plaintiff, Michael A. Fiano, and the defendant James M. Smith, the plaintiff appeals from the summary judgment rendered by the trial court in favor of the defendants Old Saybrook Fire Company No. 1, Inc. (fire company), and the town of Old Saybrook (town).[1] The plaintiff first claims that the court erred by granting the fire company's motion to reargue/reconsider its denial of a motion for summary judgment filed by the defendants. Second, the plaintiff claims that the court erred by rendering summary judgment for the defendants on the plaintiff's vicarious liability claims. We affirm the judgment of the trial court.

The alleged facts and procedural history, viewed in the light most favorable to the nonmoving plaintiff, reveal the following. The plaintiff alleged that on October 26, 2013, he operated a motorcycle, travelling south on Main Street in Old Saybrook, Connecticut. Concurrently, "Smith was the operator of a motor vehicle which was stopped on private property owned by the [fire company] . . . facing in a westerly direction on a driveway on the aforementioned property. . . . As the plaintiff's motorcycle . . . [approached] the intersection of Main Street and Old Boston Post . . . Smith, while stopped on the property of . . . [the fire company], negligently made a decision to move his vehicle from a stopped position onto the Old Boston Post Road, striking the motorcycle being operated by the plaintiff . . . ." The plaintiff, as a result of the accident, "suffered injuries of a serious, painful and permanent nature in that he sustained a head wound; a left acetabular fracture; a left femoral head dislocation; open left distal femur and tibia fractures with open bone loss; an injury to his left leg, which has required multiple surgeries and skin grafting procedures; rib fractures; and a general shock to his nervous system, all of which have permanently reduced his ability to pursue and enjoy life's activities."

On July 22, 2014, the plaintiff brought this negligence action against Smith and the defendants. The complaint included three counts. Count one asserted that Smith was negligent by failing "to keep a proper lookout . . . [failing] to keep his vehicle under proper control . . . [and failing] to properly brake his vehicle . . . ." He was also allegedly negligent because, while stopped on the fire company's property, he decided "to move his vehicle and not yield the right-of-way to vehicles approaching on Main Street in violation of . . . General Statutes § 14-247[2] . . . he negligently made a decision to start his vehicle when it could not be done so with reasonable safety without interfering with traffic, in violation of . . . General Statutes § 14-243[3] . . . and . . . he . . . failed to yield the right of way to vehicles approaching from his right at an intersection

in violation of . . . General Statutes § 14-245."[4] (Foot-notes added.)

Counts two and three asserted, in a conclusory manner, that the defendants were liable for Smith's negligence. In count two, the plaintiff alleged that the defendants were liable for his injuries pursuant to General Statutes § 7-308,[5] which governs a municipality's liability for a volunteer firefighter's negligence, and General Statutes § 7-465,[6] which addresses the liability of a municipality for damages caused by an employee, other than a firefighter covered under the provisions of § 7-308, acting in the course of duty. In count three, the plaintiff alleged that the defendants were liable pursuant to General Statutes § 52-557n,[7] which governs when a political subdivision is liable for the negligence of its agents.

On July 14, 2015, the defendants filed a motion for summary judgment as to counts two and three of the plaintiff's complaint. In their memorandum of law in support of this motion, the defendants argued that, on the basis of the plaintiff's alleged facts, they could not be held vicariously liable. The defendants contended that "Smith was [seventeen] years old and a senior in high school. . . . He was a junior member of the [fire company]. . . . However, on the day of . . . [the] accident, [Smith] was not requested to come to the firehouse. . . . Nor was he at the firehouse that day for fire [company] affairs. . . . Upon leaving the firehouse, his intention was to go home and get changed to have his picture taken for the senior yearbook. . . . He makes no claim that in leaving to make his preparation for having his picture taken that he was providing a benefit to the [defendants]. . . . Importantly, [Smith stated] that as he was leaving that day he was not acting in furtherance of the [defendants'] affairs."[8] (Citations omitted; emphasis omitted.) As a result, when the accident occurred, Smith was "not acting within the scope of his employment or performing any service to the [defendants] at the time of the accident. Accordingly, there is no basis for vicarious liability as against the moving defendants."

The plaintiff filed an objection to the defendants' motion for summary judgment on January 21, 2016. In support of his objection to the defendants' motion for summary judgment, the plaintiff asserted that there was a genuine issue of material fact as to whether Smith was acting as the defendants' "agent" and "in the scope of his employment" at the time of the accident and, thus, the defendants could be found vicariously liable. The plaintiff focused on three factual allegations: first, that Smith was at the firehouse on the day of the accident to monitor for emergency calls on the radio; second, that he used his personal vehicle, which was involved in the accident, to carry out his duties as a junior firefighter; and third, that Smith admitted to being

the defendants' agent. In support, the plaintiff cited cases discussing the principles of vicarious liability, especially highlighting that whether an agency relationship exists is generally a question of fact, and referred to portions of Smith's deposition that purportedly raised a genuine issue of material fact as to whether Smith was acting within the scope of his employment at the time of the accident. The plaintiff also argued that pursuant to General Statutes § 31-275,[9] a provision of the Workers' Compensation Act, a firefighter is considered on duty for the purpose of workers' compensation claims while traveling to and from work and, therefore, Smith was acting within the scope of his employment as a volunteer firefighter at the time of the accident.

The defendants filed a reply to the plaintiff's objection to the motion for summary judgment on February 5, 2016. In that reply, the defendants reiterated that Smith left the firehouse on the day of the accident for "exclusively personal" reasons. (Emphasis omitted.) The defendants also argued that § 31-275 applies to paid firefighters, not volunteers. The defendants also asserted that the plaintiff mischaracterized the legal relevance of some of the statements Smith and others made during their deposition. In addition, the defendants argued that Smith admitting that he was an agent for the defendants at the time of the accident cannot establish a genuine issue of material fact as to whether, as a matter of law, an agency relationship existed at the time of the accident.

On February 9, 2016, the plaintiff filed a response to the defendants' reply memorandum. In this filing, the plaintiff reasserted that, pursuant to § 31-275, a firefighter is considered to be acting in the course of employment while travelling home and that the purpose of General Statutes § 7-314a is to ensure that the Workers' Compensation Act covers volunteer firefighters. The defendants filed a response to the plaintiff's surreply on February 10, 2016. In this response, the defendants again argued that the plaintiff's arguments on the basis of § 31-275 were meritless.

On February 8, 2016, the court, *Aurigemma, J.*, heard oral argument on the defendants' motion for summary judgment. The court summarily denied the defendants' motion on February 18, 2016, merely stating that "[m]aterial issues of fact exist." In response, on March 4, 2016, the defendants filed a timely motion to reargue/ for articulation on the motion for summary judgment pursuant to Practice Book § 11-12,[10] which the court summarily denied on March 7, 2016.[11] The case was scheduled to begin jury selection on June 1, 2016. On May 31, 2016, the fire company filed an untimely motion to reargue/reconsider the defendants' motion for summary judgment. The plaintiff received notice of the fire company's motion and quickly filed an objection, but the court already had granted the fire company's

motion, reconsidered, and granted the defendants' motion for summary judgment within two hours of the time of the filing of the motion to reargue/reconsider. On June 1, 2016,[12] the court apologized for its quick ruling in granting the motion for summary judgment for both defendants without hearing further arguments on the merits of the defendants' motion for summary judgment.

Subsequently, on June 1, 2016, the court issued the following written decision granting the defendants' motion for summary judgment: "There is no evidence that . . . [Smith] was acting for the benefit of the [defendants] at the time of the accident. The only evidence is that he was going home to get changed to have his picture taken for the yearbook at the time of the accident and was providing no benefit to the . . . [defendants]. The case is analogous to *Levitz* v. *Jewish Home for the Aged, Inc.*, 156 Conn. 193, [239 A.2d 490] (1968). A reasonable jury could not find that . . . [Smith] was acting within the scope of his employment at the time of the accident. Whether he was acting [within] the scope of his employment for the purpose of the workers' compensation statutes, i.e., under *Labadie* v. *Norwalk Rehabilitation Services*, [*Inc.*], 274 Conn. 219, [875 A.2d 485] (2005), cited by the plaintiff, is not relevant to the determination at issue in [the present] case." This appeal followed.

## I

The plaintiff claims the court erred by granting the fire company's motion to reargue/reconsider the defendants' motion for summary judgment. The plaintiff argues that granting this motion was procedurally improper because it was untimely and did not present new arguments. Moreover, the plaintiff emphasizes that once the court decided to permit reargument, it should have held a hearing pursuant to Practice Book § 11-12 prior to reconsidering its earlier ruling and granting the defendants' motion for summary judgment. The defendants argue, in part, that the court's decision should not be overturned because the court already had held argument on the merits of summary judgment and, further, the court possessed the authority to reconsider its decision on summary judgment on its own accord. Although the plaintiff raises valid concerns, in the circumstances presented in the present case, we agree with the defendants.

We begin by summarizing the parties' arguments that were presented to the court both in support of and in objection to the motions to reargue. Following discovery, the defendants moved for summary judgment on the basis that they could not be vicariously liable because Smith was not acting within the scope of his employment or official duties at the time of the accident. The court denied the motion on February 18, 2016. In response, on March 4, 2016, the defendants timely filed

a motion to reargue/for articulation concerning the denial of the motion for summary judgment pursuant to Practice Book § 11-12. In support of their motion to reargue/for articulation, the defendants reiterated the same arguments presented in their motion for summary judgment. The defendants did not raise new factual allegations or legal arguments in this motion that they had not already presented to the court. The defendants stated that Smith was not "on duty or otherwise acting in his capacity as a junior member of the [fire company] when he was present at the [firehouse] on the day [of the accident]. . . . Smith . . . was not requested to come to the firehouse, and, furthermore, was not at the firehouse that day for [the defendants'] affairs. . . . Accordingly, the defendants respectfully submit [that] there is no basis for a determination that [Smith] was acting as an agent of the [fire company] . . . on the [day] of the accident . . . ." (Citation omitted; emphasis omitted.) The defendants also pointed out that the plaintiff's arguments pertaining to § 31-275 were misguided because § 31-275 applies only when a firefighter is returning home "after duty, which . . . Smith was not," and applies to professional, not volunteer, firefighters. (Emphasis omitted; internal quotation marks omitted.) The defendants argued that, instead, General Statutes § 7-314b applies to volunteer firefighters. Section 7-314b (a) provides that volunteer firefighters may be eligible for workers' compensation if they are injured while performing "fire duties," as defined by § 7-314b (b). The defendants contended that the term "fire duties" does not include the plaintiff's actions at the time of the accident. The defendants also requested that the court articulate its reasons for denying their motion for summary judgment if the court would not grant reargument. The court denied this motion.[13]

Just before jury selection was scheduled to begin, the fire company filed a motion to reargue/reconsider on May 31, 2016. In this motion, the fire company maintained the position that the defendants could not be held vicariously liable as a matter of law. The fire company emphasized that Smith was "(1) a junior volunteer firefighter; (2) visiting his then girlfriend at the [firehouse]; (3) leaving the [firehouse] for the purpose of taking prom photographs; (4) operating a private, family owned vehicle that did not have its emergency lights on; and (5) not driving to or from an emergency call when the subject collision occurred on a public roadway." The fire company did not raise factual allegations or legal arguments in this motion to reargue/reconsider that were not previously presented in support of the defendants' motion for summary judgment. In response, the plaintiff objected on the grounds that this motion was untimely, the court already had denied the defendants' motion to reargue/for articulation, and the fire company filed the motion as a dilatory tactic on the day before jury selection was to begin.[14] The court

granted the fire company's motion for reargument within two hours of its filing and then, without holding a hearing, granted the defendants' July 14, 2015 motion for summary judgment.

We review a trial court's decision to grant a motion to reargue pursuant to the abuse of discretion standard. *Weiss* v. *Smulders*, 313 Conn. 227, 261, 96 A.3d 1175 (2014). "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only [when] an abuse of discretion is manifest or [when] injustice appears to have been done." (Internal quotation marks omitted.) *Patino* v. *Birken Mfg. Co.*, 304 Conn. 679, 698, 41 A.3d 1013 (2012). "As with any discretionary action of the trial court, appellate review requires every reasonable presumption in favor of the action, and the ultimate issue . . . is whether the trial court could have reasonably concluded as it did." *Biro* v. *Hill*, 231 Conn. 462, 465, 650 A.2d 541 (1994).

The court's decision to grant the fire company's motion to reargue/reconsider without holding a hearing before granting the defendants' motion for summary judgement amounted to an abuse of discretion. The fire company's untimely motion merely reiterated arguments that were already presented to the court numerous times, which is improper because "[a] motion to reargue . . . is not to be used as an opportunity to have a second bite of the apple or to present additional cases or briefs which could have been presented at the time of the original argument." (Internal quotation marks omitted.) *Opoku* v. *Grant*, 63 Conn. App. 686, 692–93, 778 A.2d 981 (2001). Although, in its discretion, the court may have granted the fire company's motion to reargue/reconsider despite these shortcomings, even without giving the plaintiff a reasonable amount of time to object, once it decided to grant reargument, the court should have held a hearing prior to granting the motion for summary judgment, as required by Practice Book § 11-12.

Despite the fact that the court abused its decision in granting the motion for summary judgment as a result of the fire company's motion to reargue/reconsider without holding a hearing, we decline to reverse the judgment because: first, the plaintiff was not harmed by the court's failure to hold a hearing; second, the court had the inherent authority to grant the motion for summary judgment sua sponte; and third, reversing the court's judgment would hinder the interests of judicial economy.[15]

With respect to the court's failure to hold a hearing after granting the fire company's motion to reargue/reconsider, we conclude that the plaintiff was not prejudiced. In reaching this determination, we are guided by the principle that "[w]hen reviewing claims of error,

we examine first whether the trial court abused its discretion, and, if so, we next inquire whether the error was harmless." *State* v. *Payne*, 303 Conn. 538, 552–53, 34 A.3d 370 (2012). The fire company did not present any new facts or legal arguments in its motion to reargue/ reconsider that had not already been raised in support of the defendants' motion for summary judgment. Therefore, in connection with the prior motions, the plaintiff already had been provided ample opportunity to respond to the arguments and documentation upon which the court relied in rendering summary judgment in his memorandum of law in support of the objection to the motion for summary judgment, his response to the defendants' reply memorandum, and at oral argument, on February 8, 2016. Despite the plaintiff's claimed harm as a result of the court's failure to hold a hearing prior to granting the motion for summary judgment, the plaintiff has failed to demonstrate what else he might have presented that would have swayed the court's decision. At no time during the entire process of this appeal has the plaintiff suggested anything, by way of argument, documentation, or otherwise, that he would or could have adduced in response to the motion for summary judgment to undermine the propriety of the court's rulings on it. See *McNamara* v. *Tournament Players Club of Connecticut, Inc.*, 270 Conn. 179, 194, 851 A.2d 1154 (2004). As a result, the plaintiff was not prejudiced by the absence of a hearing.[16] Additionally, in this appeal, in which we review the plaintiff's second claim pursuant to a plenary standard; *DiPietro* v. *Farmington Sports Arena, LLC*, 306 Conn. 107, 116, 49 A.3d 951 (2012); the plaintiff has been afforded an opportunity to offer any additional arguments that he could have raised before the trial court if the court had held the hearing required by Practice Book § 11-12.

The court's ability to reconsider prior decisions on its own accord also supports our conclusion not to reverse the court's decision to grant the fire company's motion to reargue. Courts can reconsider a past decision in order to correct mistakes in prior judgments. *United States* v. *Morgan*, 307 U.S. 183, 197, 59 S. Ct. 795, 83 L. Ed. 1211 (1939). "It is a power inherent in every court of justice . . . to correct that which has been wrongfully done by virtue of its process." (Internal quotation marks omitted.) Id. This inherent power includes the authority to revisit prior decisions pertaining to summary judgment. See *McNamara* v. *Tournament Players Club of Connecticut, Inc.*, supra, 270 Conn. 193 ("the trial court, in the exercise of its case management authority, has the discretion, as a trial is about to begin, to decide a dispositive question of law . . . that had been presented in writing previously to the court but had not been ruled on because of untimeliness" [emphasis omitted; footnote omitted; internal quotation marks omitted]). The court's power to reconsider a prior decision on summary judgment is not

unbounded. The court must still have jurisdiction over the matter; *Steele* v. *Stonington*, 225 Conn. 217, 219 n.4, 622 A.2d 551 (1993); and the court cannot sua sponte render summary judgment on grounds never raised by the moving party. *Greene* v. *Keating*, 156 Conn. App. 854, 861, 115 A.3d 512 (2015). In the present case, the court still had jurisdiction and did not render summary judgment on grounds that the defendants previously had never presented. Thus, the court had the authority to reconsider its prior decision on summary judgment even if the fire company had not filed a motion to reargue. This authority to reconsider the prior decision on summary judgment even if a motion to reargue had not been filed reduces the decision to grant the fire company's motion to reargue/reconsider to a mere formality.

For the reasons discussed in part II of this opinion, we are persuaded that the court's rendering of summary judgment should not be reversed because the defendants are not vicariously liable for Smith's negligence as a matter of law. Consequently, the court's decision to revisit the defendants' motion for summary judgment, being correct, prevented unnecessary proceedings in the present case. The court's decision served the principle that "[t]he policy of the law is always to prevent unnecessary litigation . . . ." *Avery* v. *Brown*, 31 Conn. 398, 401 (1863); see also *Rode* v. *Adley Express Co.*, 130 Conn. 274, 277, 33 A.2d 329 (1943) ("the public has an interest in the prevention of unnecessary litigation, both because of the burden it places on the State and the resulting crowding of the dockets of the courts" [internal quotation marks omitted]). In accordance of this principle, trial courts are given broad "case management authority," which includes the power to decide "dispositive questions of law." *McNamara* v. *Tournament Players Club, Inc.*, supra, 270 Conn. 193. The court in the present case exercised its case management authority to prevent unnecessary litigation by ruling on a dispositive question of law. If we were to reverse the court because it used procedurally improper means to reach the correct decision, we would mandate that a meritless case proceed to trial. This would be a waste of judicial resources and detrimental to the public's interest in judicial economy.

II

The plaintiff claims that the court erred by rendering summary judgment for the defendants on the plaintiff's vicarious liability claims. The plaintiff argues that there is a genuine issue of material fact as to whether Smith was acting in the course of employment or official duties at the time of the accident. The defendants argue that because Smith was tending to personal affairs at the time of the accident, they cannot be vicariously liable for his alleged negligence. We agree with the defendants.

We begin our analysis of this claim by setting forth the relevant alleged facts, viewed in the light most favorable to the nonmoving plaintiff, pertaining to Smith's service as a junior firefighter generally and his actions on the day of the accident. Smith became a junior member of the fire company in 2012. As a junior member, he was authorized to fight exterior fires and respond to other emergency calls. Smith possessed an electronic key fob that enabled him to enter the firehouse during the day. Smith, along with the other members of the fire company, was encouraged to spend time at the firehouse monitoring the radio for emergency calls in order to quicken response times, perform training exercises, and to build comradery with one another. In order to entice members to spend time at the firehouse, the fire company provided televisions, computers, a weight room, laundry facilities, and showers.

The fire company utilized a "points system" in order to track a firefighter's participation and the firefighters were required to obtain a minimum number of points in order to maintain active membership. Firefighters earned points by responding to emergency calls, staffing the firehouse during emergencies, and, at the fire company's discretion, spending time at the firehouse waiting for a call. Additionally, although the fire company is a volunteer department, the town's firefighters received monetary compensation for their duties. Full members of the fire company are eligible for pensions and receive tax abatements from the town. Members are also paid in the event they respond to a brush fire. Prior to the accident, Smith personally received payment for his time spent staffing the firehouse during emergencies.

As a junior member, Smith was not allowed to drive any of the fire company's vehicles. Thus, Smith used his personal vehicle to respond to emergency calls, travel to and from the firehouse, and to attend training. Using this vehicle, Smith also would transport other members of the company to emergencies and other fire company related events. The fire company instructed how its members were to use their personal vehicles when responding to emergencies, such as how to properly park at the scene. In his personal vehicle, Smith kept his company issued firefighting equipment, which included a helmet, coat, bunker pants, and fire boots. His vehicle was adorned with a special license plate that identified him as a member of the fire company, which grants him access to closed roads during emergencies.

On the day of the accident, Smith went to the firehouse because he had a "couple [of] extra hours to spare." Smith's girlfriend at the time, who also was a junior member of the fire company, and two other members of the fire company, were also present at the firehouse that day. Smith spent his time at the firehouse

monitoring the radio for emergency calls. After spending approximately three and one-half hours at the firehouse, Smith left with the intention to go home to change his clothing in order to have his picture taken for his senior yearbook. Smith departed the firehouse in his personal vehicle, and, as Smith pulled out of the firehouse driveway onto Main Street, his vehicle and the plaintiff's vehicle collided.

We observe the following principles relating to motions for summary judgment. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing . . . that the party is . . . entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Powell* v. *Infinity Ins. Co.*, 282 Conn. 594, 599–600, 922 A.2d 1073 (2007).

"On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the nonmoving party is entitled to judgment as a matter of law. . . . Because the trial court rendered judgment for the [defendants] as a matter of law, our review is plenary and we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Citation omitted; internal quotation marks omitted.) *Davies* v. *General Tours, Inc.*, 63 Conn. App. 17, 21, 774 A.2d 1063, cert. granted on other grounds, 256 Conn. 926, 776 A.2d 1143 (2001) (appeal withdrawn October 18, 2001), overruled on other grounds by *Cefaratti* v. *Aranow*, 321 Conn. 593, 141 A.3d 752 (2016).

Pursuant to the principles of vicarious liability, "every man who prefers to manage his affairs through others, remains bound to so manage them that third persons are not injured by any breach of legal duty on the part of such others while they are engaged upon his business and within the scope of their authority. . . . But it must be the affairs of the principal, and not solely the affairs of the agent, which are being furthered in order for the doctrine to apply." (Citations omitted; internal quotation marks omitted.) *Mitchell* v. *Resto*, 157 Conn. 258, 262, 253 A.2d 25 (1968). "Before vicarious liability can be imposed, however, there must be sufficient evidence produced to warrant a finding of agency between the parties. If there is a finding that the allegedly negligent actor is not an . . . agent, then the claim of vicarious liability must fail." *Cefaratti* v. *Aranow*, 154 Conn. App. 1, 29, 105 A.3d 265 (2014), rev'd on other grounds, 321 Conn. 593, 141 A.3d 752 (plaintiffs' petition for certifica-

tion), aff'd, 321 Conn. 637, 138 A.3d 837 (defendants' petition for certification) (2016). "Agency is defined as the fiduciary relationship which results from manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act . . . ." (Internal quotation marks omitted.) *Beckenstein* v. *Potter & Carrier, Inc.*, 191 Conn. 120, 132, 464 A.2d 6 (1983). Although whether an agent is serving the benefit of his employer is generally a question of fact, there are instances, such as the present case, where the question is so obvious that it becomes one of law. *Brown* v. *Housing Authority*, 23 Conn. App. 624, 628, 583 A.2d 643 (1990), cert. denied, 217 Conn. 808, 585 A.2d 1233 (1991).

We now address the plaintiff's first assertion that there are numerous alleged facts which establish that Smith was acting within the course of his employment or official duties at the time of the accident. In order to prevail on appeal, the plaintiff must establish that there is a genuine issue of material fact as to whether Smith served within the scope of his employment to further the defendants' interest at the time of the accident because the defendants are liable only for those torts of Smith that "are done with a view of furthering [the defendants'] business within the field of this employment—for those which have for their purpose the execution of the [defendants'] orders or the doing of the work assigned to him to do." (Internal quotation marks omitted.) Id. The plaintiff argues that Smith provided a benefit to the defendants because he went to the firehouse on the day of the accident in order to respond to emergency calls, and that the fire company, generally, encouraged this activity because it quickened response times. Specifically, the plaintiff asserts that by utilizing a points system that encouraged spending time at the firehouse and fitting the firehouse with attractive amenities, such as exercise equipment and televisions, the fire company benefitted from having Smith and the other firefighters spending time at the firehouse. Although the plaintiff provides grounds to conclude that the defendants may have benefitted from Smith's presence, or otherwise enticed Smith to be at the firehouse, the plaintiff does not connect how this provides a basis to determine that the defendants benefitted from Smith's departure from the firehouse, which was when Smith's allegedly tortious conduct occurred. In fact, if the defendants benefited from Smith's presence at the firehouse, then Smith's departure would be to their detriment.

The plaintiff next states that the defendants can be held vicariously liable because Smith's alleged negligence occurred on the fire company's property. In support of this contention, the plaintiff reiterates that the fire company had encouraged Smith to be at the firehouse, and without this encouragement, Smith would not have been at the firehouse on the day of the acci-

dent. The plaintiff also argues that "an off duty employee's negligence at the employer's place of business can raise a prima facie case for respondeat superior liability," relying on *Glucksman* v. *Walters*, 38 Conn. App. 140, 659 A.2d 1217, cert. denied, 235 Conn. 914, 665 A.2d 608 (1995). In *Glucksman*, the appellate tribunal concluded that a reasonable jury could find that an employee's alleged negligence could still fall within the course of her employment despite being off duty. Id., 141–43, 148. Instead of supporting the plaintiff's assertion that an employer is liable for an off duty employee's negligence because it occurred on the employer's premises, *Glucksman* adheres to the rule that whether an employer can be liable for an employee's negligence hinges on whether the employee was furthering the employer's interests when the negligent act occurred. Smith was in the process of leaving to attend to his personal affairs, which the plaintiff does not dispute. It is inconsequential that he was still on the fire company's property when "he negligently accelerated his vehicle into the roadway" because he was no longer furthering the defendants' interests at that time.

The plaintiff also asserts that because Smith's negligence occurred while he was operating his personal vehicle, which the plaintiff describes as "an authorized emergency vehicle that was regulated by the [fire company]," there is a genuine issue of material fact as to whether the plaintiff was subject to the fire company's control at the time of the accident. The plaintiff argues that this is relevant because in determining whether an agency relationship exists, courts look to whether the principal "has the right to direct and control the work of the agent . . . ." *Beckenstein* v. *Potter & Carrier, Inc.*, supra, 191 Conn. 133. The plaintiff asserts that the fire company had control over Smith because the fire company set policies directing how personal vehicles were to be used to respond to emergencies. The plaintiff points out that, prior to the accident, Smith used his personal vehicle in order to respond to emergencies, travel to and from the firehouse, and attend off-site trainings. In addition, the plaintiff contends that Smith kept his fire company issued gear in his personal vehicle and the fire company allowed Smith to outfit his vehicle with a license plate that identified Smith as a volunteer firefighter. Although the plaintiff is correct that control is an essential element in determining whether an agency relationship exists, the plaintiff does not provide any authority that a fire company exercises control over volunteer members when they use their personal vehicles for personal matters because they use the same vehicles at other times, under the supervision of the fire company they serve, in their capacity as volunteer firefighters. Essentially, the plaintiff is requesting that a volunteer fire company and the town which it serves be held liable whenever a volunteer firefighter is negligently responsible for an accident in their personal vehi-

cle. We decline to adopt such a rule.

The plaintiff's last argument is that Smith's intended destination upon leaving the firehouse does not preclude us from determining that the defendants are vicariously liable because, pursuant to the workers' compensation statutes, firefighters are considered on "duty" going to and from work,[17] and the plaintiff asserts that *Leary* v. *Johnson*, 159 Conn. 101, 267 A.2d 658 (1970), should guide us to the conclusion that a genuine issue of material fact remains and that *Levitz* v. *Jewish Home for the Aged, Inc.*, supra, 156 Conn. 193, which the court cited, is distinguishable.

The plaintiff asserts, albeit not clearly, that Smith's intended destination upon leaving the firehouse does not preclude finding that the defendants are vicariously liable because, pursuant to § 31-275, "firefighters are considered to be in the course of their employment for workers' compensation purposes while going to or coming from work." (Emphasis omitted.)

First, the plaintiff's argument fails to acknowledge that volunteer firefighters are treated differently from professional firefighters for the purpose of workers' compensation, and the provisions in § 31-275 do not apply to volunteer firefighters. *Evanuska* v. *Danbury*, 285 Conn. 348, 357–58, 939 A.2d 1174 (2008) ("§§ 7-314a and 7-314b are the only procedural vehicles available for volunteer firefighters to obtain workers' compensation benefits for injuries sustained while performing fire duties, even when such injuries prevent them from performing at their regular, paid employment" [footnote omitted]). Although for the purpose of workers' compensation, the definition of "in the course of his employment" for professional firefighters includes "such individual's departure from such individual's place of abode to duty, such individual's duty, and the return to such individual's place of abode after duty"; General Statutes § 31-275 (1) (A) (i); volunteer firefighters are only entitled to workers' compensation for injuries incurred "while in training or engaged in volunteer fire duty"; General Statutes § 7-314a (a); or when "engaged in volunteer fire duties"; General Statutes § 7-314b (a).

Second, even if the plaintiff's arguments relied on the appropriate statutes, we fail to see how §§ 7-314a or 7-314b preclude us from concluding that the defendants cannot be held vicariously liable because Smith left the firehouse to attend to his personal affairs. As used in § 7-314a, "fire duties" include, inter alia, duties performed while at fires, answering alarms of fire and while directly returning from fires. See General Statutes § 7-314. As used in § 7-314b, the term "fire duties" includes "duties performed while at fires, answering alarms of fire, answering calls for mutual aid assistance, returning from calls for mutual aid assistance, at fire drills or training exercises, and directly returning from fires . . . ." General Statutes § 7-314b (b). Nothing in either

definition persuades us that the term "fire duties" encompasses Smith's conduct in departing the firehouse to go home to change his clothing to have his picture taken for his high school yearbook. Moreover, even if Smith's activities were deemed to be fire duties, the plaintiff provides no authority that the workers' compensation statutes provide guidance for determining when volunteer firefighters are acting within the scope of their employment for the purpose of vicarious liability. Nothing in the text of §§ 7-314a or 7-314b sheds light on whether an employer can be held vicariously liable for its employee's negligence and no appellate court has relied on either statute in making such a determination. Instead, the limited purpose of § 7-314a is that it "allows volunteer [firefighters] to receive workers' compensation benefits as if they were employees of the municipality that benefited from their services." *Thomas* v. *Lisbon*, 209 Conn. 268, 272, 550 A.2d 894 (1988).

We now turn to the plaintiff's argument that the present case is more akin to *Leary* than *Levitz*. In *Leary*, the plaintiff, who had a financial interest in the sale of a home, contacted a cleaning service to clean the floors before the defendant purchasers moved into the home. *Leary* v. *Johnson*, supra, 159 Conn. 103. The plaintiff directed which portions of the house were to be cleaned and the defendants reimbursed the cost of the cleaning service. Id. While walking through the home, the plaintiff slipped on a puddle left by the cleaning service and brought a negligence action against the defendants, alleging that they were vicariously liable for the cleaning service's alleged negligence. Id., 103–104. On appeal from a directed verdict rendered in favor of the defendants, our Supreme Court reversed the trial court because a jury could have found that the cleaning service "was furthering the purposes and interests of the defendants" and "had been obtained by the plaintiff as the defendants' agent" due to the "several legal relationships that lurked in the evidence offered." Id., 106.

In *Levitz*, the defendant employee of the defendant home for the aged left his place of employment to tend to personal errands. *Levitz* v. *Jewish Home for the Aged, Inc.*, supra, 156 Conn. 196. In the process of leaving his place of employment, the employee lost control of his vehicle in the employer's parking lot and struck the plaintiff. Id. The plaintiff brought a negligence action against the employee and the home for the aged, alleging that the home for the aged was vicariously liable for its employee's conduct. Id., 194. The trial court set aside a jury verdict for the plaintiff and rendered judgment notwithstanding the verdict for the home for the aged because the employee was not acting in the course of his employment at the time of the accident. Id., 198. On appeal, our Supreme Court affirmed the judgment of the court because, "[b]efore responsibility can attach to the [employer], the relationship of master

and servant must have existed at the time the injury was done to the plaintiff and [the employee] must have been acting in the course of his employment. 'In the course of his employment' means while engaged in the service of the master, and it is not synonymous with the phrase 'during the period covered by his employment.' " Id.

Contrary to what the plaintiff asserts, we do not conclude that the factual situation presented in *Leary* is more analogous to the present case than the situation in *Levitz*. In *Leary*, the central issue was whether the cleaning service could be an agent for the defendants despite being hired and supervised by the plaintiff. This dissimilar fact pattern provides little guidance, if any, to the present case. *Levitz*, however, is useful in our analysis of whether the defendants are vicariously liable for Smith's alleged negligence because it addresses whether an employer can be vicariously liable for its employee's negligence when the employee negligently caused an accident on the employer's premises while tending to personal matters. *Levitz* remains good law and is consistent with the well established principle that a defendant cannot be held liable pursuant to respondeat superior when its agent is "going on a frolic of his own." (Internal quotation marks omitted.) W. Keeton et al., Prosser and Keeton on the Law of Torts (5th Ed. 1984) § 70, p. 503. If Smith was not acting in the course of his employment or official duties as a junior firefighter, then the defendants have no more liability for what Smith did than they would for the acts of a stranger. Id. Therefore, based on *Levitz* and the well established principles of agency law, we conclude that Smith's purpose for leaving the firehouse is dispositive of whether the defendants can be held vicariously liable for his negligence.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Smith is also a defendant in the present action. For the purpose of this opinion, our references to the defendants are to the fire company and the town only.

[2] General Statutes § 14-247 provides: "The driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right-of-way to all vehicles approaching on such highway. Failure to grant the right-of-way as provided by this section shall be an infraction."

[3] General Statutes § 14-243 provides in relevant part: "(a) No person shall move a vehicle which is stopped, standing or parked unless such movement can be made with reasonable safety and without interfering with other traffic, nor without signalling as provided by section 14-244. . . .

"(c) Violation of any of the provisions of this section shall be an infraction."

[4] General Statutes § 14-245 provides: "As used in this section and subsection (e) of section 14-242, 'intersection' means the area common to two or more highways which cross each other. Each driver of a vehicle approaching an intersection shall grant the right-of-way at such intersection to any vehicle approaching from his right when such vehicles are arriving at such intersection at approximately the same time, unless otherwise directed by a traffic officer. Failure to grant the right-of-way as provided in this section shall be an infraction."

[5] General Statutes § 7-308 provides in relevant part: "(a) As used in this section, 'municipality' has the same meaning as provided in section 7-314; 'fire duties' has the same meaning as provided in section 7-314; 'ambulance

service' means 'ambulance service' as defined in section 7-314b . . . .

"(b) Each municipality of this state, notwithstanding any inconsistent provision of law, general, special or local, or any limitation contained in the provisions of any charter, shall protect and save harmless any volunteer firefighter . . . of such municipality from financial loss and expense, including legal fees and costs, if any, arising out of (1) any claim, demand, suit or judgment by reason of alleged negligence on the part of such volunteer firefighter . . . *while performing fire, volunteer ambulance or fire police duties*, and (2) any claim, demand or suit instituted against such volunteer firefighter . . . by reason of alleged malicious, wanton or wilful act on the part of such volunteer firefighter . . . *while performing fire, volunteer ambulance or fire police duties.* In the event that a court of law enters a judgment against such volunteer firefighter . . . for a malicious, wanton or wilful act, such volunteer firefighter . . . shall reimburse such municipality for any expenses that the municipality incurred in providing such defense, and such municipality shall be exempt from any liability to such volunteer firefighter . . . for any financial loss resulting from such act. . . . Such municipality may arrange for and maintain appropriate insurance or may elect to act as a self-insurer to maintain such protection. No action or proceeding instituted pursuant to the provisions of this section shall be prosecuted or maintained against the municipality or firefighter . . . unless at least thirty days have elapsed since the demand, claim or claims upon which such action or special proceeding is founded were presented to the clerk or corresponding officer of such municipality. No action for personal injuries or damages to real or personal property shall be maintained against such municipality and firefighter . . . unless such action is commenced within one year after the cause of action therefor arose and notice of the intention to commence such action and of the time when and the place where the damages were incurred or sustained has been filed with the clerk or corresponding officer of such municipality and with the firefighter, volunteer ambulance member or volunteer fire police officer not later than six months after such cause of action has accrued. . . . Governmental immunity shall not be a defense in any action brought under this section. . . ." (Emphasis added.)

[6] General Statutes § 7-465 provides in relevant part: "(a) Any town, city or borough, notwithstanding any inconsistent provision of law, general, special or local, shall pay on behalf of any employee of such municipality, *except firemen covered under the provisions of section 7-308* . . . all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person or property, except as set forth in this section, if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was *acting in the performance of his duties and within the scope of his employment*, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty. . . ." (Emphasis added.)

[7] General Statutes § 52-557n provides in relevant part: "(a) (1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof *acting within the scope of his employment or official duties* . . . . (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.

"(b) Notwithstanding the provisions of subsection (a) of this section, a political subdivision of the state or any employee, officer or agent *acting within the scope of his employment or official duties* shall not be liable for damages to person or property resulting from . . . (6) the act or omission of someone other than an employee, officer or agent of the political subdivision . . . ." (Emphasis added.)

[8] The defendants appended an excerpt from Smith's March 27, 2015 deposition to their motion for summary judgment. During this deposition, Smith stated the following about the day of the accident: he was not requested to be at the firehouse; his girlfriend was also present at the firehouse; he left the firehouse in his personal vehicle; and he left the firehouse in order to change his clothes to have his picture taken for his senior yearbook.

[9] General Statutes § 31-275 provides in relevant part: "For a . . . fire-fighter, 'in the course of his employment' encompasses such individual's departure from such individual's place of abode to duty, such individual's duty, and the return to such individual's place of abode after duty . . . ."

[10] Practice Book § 11-12 provides in relevant part: "(a) A party who wishes to reargue a decision or order rendered by the court shall, within twenty days from the issuance of notice of the rendition of the decision or order, file a motion to reargue setting forth the decision or order which is the subject of the motion, the name of the judge who rendered it, and the specific grounds for reargument upon which the party relies. . . .

"(c) The motion to reargue shall be considered by the judge who rendered the decision or order. Such judge shall decide, without a hearing, whether the motion to reargue should be granted. If the judge grants the motion, the judge shall schedule the matter for hearing on the relief requested. . . ."

[11] The plaintiff did not file an objection to the defendants' March 4, 2016 motion to reargue/for articulation.

[12] The court rendered summary judgment on June 1, 2016. According to the plaintiff's counsel, however, at 3 p.m. on May 31, 2016, he received notice from the caseflow office that the court had already decided to reverse its original decision and grant the motion for summary judgment.

[13] The plaintiff did not file a motion in objection to the defendants' motion for reargument.

[14] The plaintiff did not have the opportunity to file this objection until after the court granted the fire company's motion to reargue/reconsider.

[15] We are not condoning the defendants' use of a motion to reargue to rehash arguments already presented and the court, in accordance with Practice Book 11-12, should have held a hearing prior to granting the defendants' motion for summary judgment. In affirming the trial court on the plaintiff's first claim, we are limiting our holding to the specific circumstances of the present case.

[16] At oral argument, the plaintiff conceded that he was not prejudiced by the court's decision to not hold a hearing prior to granting the motion for summary judgment.

[17] The plaintiff also makes an unpersuasive argument that the coming and going rule, which is used to determine whether an employee is eligible for workers' compensation; see *Balloli* v. *New Haven Police Dept.*, 324 Conn. 14, 25, 151 A.3d 367 (2016); "does not preclude a vicarious liability finding in [the present] case." As no appellate court has ever applied this rule in analyzing whether an employer is liable for an employee's negligence, we determine that, contrary to the plaintiff's assertions, this rule is not pertinent to the present case.