JOSEPH CIRRITO *v.* TURNER CONSTRUCTION
CO. ET AL.
(10809)

PETERS, HEALEY, PARSKEY, SHEA and GRILLO, Js.

Argued February 2—decision released April 12, 1983

*James T. Haviland II,* for the appellant (named defendant).

*Raymond C. Lyddy,* with whom were *William F. Gilden* and, on the brief, *Paul M. Clyons,* for the appellee (defendant State Lathing Company).

GRILLO, J. The chain of events culminating in the present appeal is as follows: The plaintiff, Joseph Cirrito, commenced an action against Con-

necticut College, Turner Construction Company (hereinafter Turner), and State Lathing Company, (hereinafter State), for injuries he sustained on November 7, 1975. Turner was the general contractor in the construction of a library building for Connecticut College. Turner employed State for the building's lathing and plaster work. State, in turn, subcontracted the plastering work to McGlone-Hartmann, Inc., the plaintiff's employer.

Cirrito settled his claims with all defendants. There remained, however, a cross complaint filed by Turner against State predicated on State's refusal to indemnify Turner pursuant to a contract entered into by State and Turner. Turner alleged it had sustained damages in the amount of $18,500 and attorneys' fees of $2890.

The thrust of State's defense was that the factual situation involved in Cirrito's injuries did not render it liable to indemnify Turner. State contended that its liability extended only to injury incurred during the actual performance of its work (plastering) or, at most, only to injuries occurring in an area where such work was being performed.

The trial court agreed with State's claim, holding that Cirrito was not engaged in his work when he was injured nor was he in the building where the work was being performed. The court, therefore, concluded that the connection between the execution of the work and Cirrito's injuries was "too tenuous" to require indemnification. We disagree.

The facts as stipulated are as follows: On November 7, 1975, Cirrito was working in the basement at the construction site. His working hours ended at 3:30 p.m. Between 3:20 and 3:25 p.m. Cirrito came out of the basement, went onto the

loading dock at the back of the building and walked down the stairs leading from the loading dock to the ground. The stairs are outside the building which was being constructed, but attached thereto. Cirrito was carrying two trowels, a brush, a "hawk" (a device holding plaster), his work clothes and lunchbox. It was Friday and he did not leave his tools because he thought it was unsafe to leave them at the job site over the weekend. Proceeding down the stairs, carrying the above items, he fell and injured himself. The stairs were constructed and maintained by Turner.

The indemnification clause of the contract reads: "The subcontractor hereby assumes entire responsibility and liability for any and all damage or injury of any kind or nature whatever (including death resulting therefrom) to all persons, whether employees of the subcontractor or otherwise, and to all property caused by, resulting from, arising out of or occurring in connection with the execution of the Work; and if any claims for such damage or injury (including death therefrom) be made or asserted, whether or not such claims are based upon Turner's alleged active or passive negligence or participation in the wrong . . . The subcontractor agrees to indemnify and save harmless Turner . . . from and against any and all such claims . . . ."

In *Laudano* v. *General Motors Corporation*, 34 Conn. Sup. 684, 688, 388 A.2d 842 (1977), the seller agreed " 'to indemnify and protect [the] Buyer against all liabilities, claims or demands . . . growing out of the performance of this contract . . . .' " In upholding the claim of the indemnitee, the court observed that the word "all" is a broad term. Id. "Indemnity clauses in contracts entered into by

businesses, particularly in construction contracts, should be viewed realistically as methods of allocating the cost of the risk of accidents apt to arise from the performance of the contract." Id., 687.

Viewing "realistically" the present indemnity clause in the contract by Turner, one can reasonably infer from the wording of the contract that at least one of the factors involved in Turner's including such an indemnification clause was its wish to protect itself from potential liability as principal employer under the Workers' Compensation Act; General Statutes § 31-291; by obtaining reimbursement from its subcontractors for compensation payments for which it might be obligated. See *Johnson* v. *Mortenson*, 110 Conn. 221, 224–25, 147 A. 705 (1929). Consistent with that assumption, it is noted that the phrase included in the indemnity clause requiring the injury to be one "arising out of . . . the execution of the Work" is fairly similar to that in the Workers' Compensation Act, where the sine qua non is that the injury arise out of and in the course of employment.[1] General Statutes § 31-284. We have held that a charge relating to principles of law enunciated in workers' compensation cases is equally applicable to cases brought under the common law.[2] It is therefore appropriate to consider this court's opinions relative to the application of the Workers' Compensation Act terminology in reference to cases involving an employee's going to or departing from work.

---

[1] "[W]ork. Noun: Employment." Ballantine's Law Dictionary (3d Edition).

[2] See *D'Addario* v. *American Automobile Ins. Co.*, 142 Conn. 251, 255, 113 A.2d 361 (1955). (In suit on automobile policy, the court, in charge relating to whether plaintiff employee was engaged in business of insured, adopted language applicable to workers' compensation decisions.)

In *Hughes* v. *American Brass Co.,* 141 Conn. 231, 232–33, 104 A.2d 896 (1954), an employee was injured on his way to work on a passway in a parking lot adjacent to the defendant's plant maintained by it. We held that "[t]he essential causal connection appears . . . to support the . . . conclusion that the accidental injury arose out of the employment." Id., 235.

In *Kuharski* v. *Bristol Brass Corporation,* 132 Conn. 563, 564–65, 46 A.2d 11 (1946), the plaintiff was injured while going to work as he was crossing a street lying between two of the defendant's plants after interviewing a member of a gasoline ration committee on the defendant's property. The defendant resisted the claim, the fulcrum of its defense being that the work of the plaintiff had not yet begun. Id., 566. This court concluded that the plaintiff was using the street as an "incident" of his employment, and that consequently the injury arose out of it. Id., 567.

The claimant's decedent in *Moran* v. *New York, N. H. & H. R. Co.,* 109 Conn. 94, 96–97, 145 A. 567 (1929), was leaving the employer's premises after work by climbing steps and succumbed from exertion. The court concluded the commissioner was justified in holding that the death arose out of the employment. Id., 97.[3]

In the present case, State contends that the intent of the indemnification clause is to transfer responsibility only for injuries occurring within State's work area where it exercised control, and that correspondingly Turner would be responsible for injuries occurring in areas under its control. In inter-

---

[3] For other cases dealing with cases involving going to and leaving work, see *Taylor* v. *M. A. Gammino Construction Co.,* 127 Conn. 528, 531–32, 18 A.2d 400 (1941).

preting a contract courts cannot add new or different terms. *Collins* v. *Sears, Roebuck & Co.*, 164 Conn. 369, 375, 321 A.2d 444 (1973). In urging that we construe the clause in this manner, State implicitly asks this court to make such an addition.

Further, as a prerequisite to liability State asserts that the worker must be executing the work of State, i.e., plastering and lathing at the time when the injury occurred. State argues that Turner's position is inconsistent because an injury resulting while leaving work cannot be regarded as occurring in connection with the work.

In *Commercial Union Assurance Co.* v. *Brown Co.*, 120 N.H. 620, 419 A.2d 1111 (1980), wherein the New Hampshire Supreme Court cited *Laudano* v. *General Motors Corporation*, supra, the contract in dispute provided that the contractor would hold the owner of the premises "harmless from any and all loss . . . sustained by any person . . . without regard to whether the person or persons are working within the scope of their employment . . . ." *Commercial Union Assurance Co.* v. *Brown Co.*, supra, 622. This case furnishes a useful precedent even though the contractual language therein is more sweeping than in the present case. In finding in favor of the indemnitee, the court stated that the fact that it was "quitting time" and that the employee was preparing to go home when he sustained injuries descending the stairs lacked materiality. Id., 624. "We do not find the fact that the employee was not actually working at the time of the injury to be significant. He was on the defendant's [owner's] premises for the purpose of performing the contract and was still in the employ of the [contractor]." Id. The judgment of the court was that the injuries suffered resulted from the performance of the contract. Id., 624–25.

More pertinent is the case of *Turner Construction Company* v. *Belmont Iron Works,* 158 F. Sup. 309 (E.D. Pa. 1957), which bears a striking similarity to the present case. In *Turner,* an employee of the defendant subcontractor's subcontractor was killed as he left work, falling through a partially completed section of roof. Id., 310. The defendant subcontractor had nothing to do with the roof and no control over that part of the job. Id. The agreement between the general contractor and the defendant subcontractor (indemnitor) provided indemnification for personal injuries "growing out of or resulting from [the] execution of the`work provided [for] in this contract or occurring *in connection* therewith." (Emphasis added.) Id., 309. As here, the indemnitor contended that it had no control of the premises, and that there must be a causal connection between the work it contracted to perform and the injury sustained. Rejecting these arguments, the court concluded: "I cannot agree that the element of causality, as [the indemnitor] defines it, is a necessary condition of its liability to [the indemnitee]. There might be ground for the argument (though I do not so decide) if the clause had merely said injury 'growing out of or resulting from the execution of the work' and stopped there. However, the clause goes on 'or occurring in connection therewith.' Plainly, the parties meant to add something to the concept of an injury caused by or resulting from the work.

"Without attempting a definition of the phrase, I can say that in my opinion it includes an injury incurred by a workman, employed for the work contracted for by the indemnitor, in the act of leaving the premises at the end of the day's work." Id., 310.

As in *Laudano,* the court in *United States Steel Corporation* v. *Emerson-Comstock Co.,* 141 F. Sup. 143, 146 (N.D. Ill. 1956), underscored the all-embracing terms of the indemnity agreement. There the defendant agreed to save harmless and defend the plaintiff " 'from and against all suits, actions . . . [and] damages . . . in any manner caused by, arising from, incident to, connected with or growing out of the performance of this contract.' " Id. In upholding the indemnitee's claim so as to include anyone's negligence, including that of the indemnitee, the court opined: "There cannot be any broader classification than 'all . . . claims . . . in any manner incident to, connected with or growing out of the performance of this contract.' " Id.

We conclude that although the injured employee was not actually laboring when injured, and although he was not in the exact locality of his work, his actions as set forth above in the stipulated facts indicate a sufficient connection between his injuries and his work to make the indemnitor liable.[4]

---

[4] In reaching the opposite conclusion, the trial court underscored the definition of "work" as defined within the contract to limit indemnification to those injuries which occur during the execution of the specific type of work contracted for: plastering and lathing. We do not subscribe to the construction that a mere definition of "work" precludes indemnification. The trial court further relied upon a line of Texas cases which look to the cause of the injury notwithstanding an indemnity clause which covers the indemnitee's negligence. Where the cause of the injury does not occur as a result of the execution of the specific type of work called for in the contract, these cases deny recovery. E.g., *Sun Oil Co.* v. *Renshaw Well Service, Inc.,* 571 S.W.2d 64, 68-71 (Tex. Civ. App. 1978). We do not find this reasoning persuasive.

There is error, the judgment is set aside and the case is remanded with direction to enter judgment for the cross complainant in accordance with the stipulation[5] in the record.

In this opinion the other judges concurred.

---

[5] The stipulation reads, in relevant part: "If the issues are found for cross complainant, damages are:  Attorneys' fees  $  2,890.00
Indemnity  18,500.00

$ 21,390.00"