******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# MICHAEL A. FIANO *v.* OLD SAYBROOK FIRE COMPANY NO. 1, INC., ET AL.
## (SC 20135)

Robinson, C. J., and McDonald, D'Auria,
Mullins, Kahn and Vertefeuille, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendants, S, F Co., and the town of Old Saybrook, for personal injuries he sustained when his motorcycle collided with a motor vehicle operated by S as S was exiting the driveway of F Co., a fire department in Old Saybrook, and entering a public roadway. The plaintiff alleged that the collision had occurred as a result of S's negligent operation of his motor vehicle when S, a junior volunteer firefighter with F Co., was acting within the scope of his employment with F Co. The plaintiff further alleged that, because S was an employee or agent of F Co. and the town, they were vicariously liable for S's negligence pursuant to the statutes (§§ 7-308 and 7-465) that indemnify volunteer firemen and municipal employees for liability imposed while acting within the scope of their employment. F Co. and the town filed a motion for summary judgment, claiming that, because S was leaving the fire department and on his way home to attend to personal matters when the collision occurred, there was no genuine issue of material fact as to whether S was acting within the scope of his employment with F Co. at that time. The trial court granted the motion and rendered judgment for F Co. and the town, from which the plaintiff appealed to the Appellate Court. The Appellate Court upheld the trial court's granting of the motion for summary judgment, and the plaintiff, on the granting of certification, appealed to this court. *Held* that the Appellate Court properly upheld the trial court's granting of summary judgment in favor of F Co. and the town on the ground that there was no genuine issue of material fact that S was not acting within the scope of his employment at the time of the accident and, therefore, that F Co. and the town could not be held vicariously liable for S's negligence as a matter of law: a reasonable jury, properly instructed in the legal principles governing the doctrine of respondeat superior, could conclude only that S was engaged in the pursuit of purely personal affairs and was not under the control of F Co. or acting in furtherance of its business when the accident occurred, and the fact that S was on or very close to F Co.'s premises at the time of the accident and would have been able to respond immediately if there had been an emergency call did not lead to the conclusion that F Co. actually exercised control over S or that S was performing some act for F Co.'s benefit at that time; moreover, although there was some overlap in the factors to be considered in determining whether an employee is acting within the scope of his employment for purposes of workers' compensation law and under the doctrine of respondeat superior, the public policies underlying that law and doctrine are very different, and, even if S was engaged in fire duties at the time of the accident within the meaning of the statute (§ 7-314 [a]) that defines fire duties with respect to volunteer firefighters for purposes of workers' compensation coverage, S was not acting within the scope of his employment for purposes of imposing vicarious liability on F Co. or the town.

Argued February 20—officially released June 25, 2019

*Procedural History*

Action to recover damages for personal injuries sustained as a result of the defendants' alleged negligence, brought to the Superior Court in the judicial district of Middlesex, where the court, *Aurigemma, J.*, granted the motion for summary judgment filed by the named defendant et al. and rendered judgment thereon, from which the plaintiff appealed to the Appellate Court,

*Keller*, *Bright* and *Mihalakos*, *Js*., which affirmed the trial court's judgment, and the plaintiff, on the granting of certification, appealed to this court. *Affirmed.*

*James J. Healey*, with whom was *Douglas P. Mahoney*, for the appellant (plaintiff).

*Michael F. O'Connor*, for the appellees (named defendant et al.).

*Opinion*

VERTEFEUILLE, J. The issue that we must resolve in this certified appeal is whether the trial court properly determined that there was no genuine issue of material fact as to whether the defendant James M. Smith, a junior volunteer firefighter with the named defendant, the Old Saybrook Fire Company No. 1, Inc. (fire company), was acting within the scope of his employment with the fire company at the time that the motor vehicle that he was driving collided with a motorcycle being driven by the plaintiff, Michael A. Fiano. The plaintiff brought this action alleging that he had been injured as the result of Smith's negligent operation of his motor vehicle and that the fire company and the defendant town of Old Saybrook (town) were vicariously liable for Smith's negligence pursuant to General Statutes §§ 7-308[1] and 7-465.[2] The fire company and the town (collectively, municipal defendants) filed a motion for summary judgment, claiming that, because Smith had left the firehouse and was on his way home to attend to personal matters when the collision occurred, there was no genuine issue of material fact as to whether Smith was acting within the scope of his employment with the fire company at that time. The trial court ultimately granted that motion and rendered judgment in favor of the municipal defendants. Thereafter, the plaintiff appealed to the Appellate Court, which affirmed the judgment of the trial court. See *Fiano* v. *Old Saybrook Fire Co. No. 1, Inc.*, 180 Conn. App. 717, 744, 184 A.3d 1218 (2018). We then granted the plaintiff's petition for certification to appeal from the judgment of the Appellate Court, limited to the following issue: "Did the Appellate Court properly uphold the trial court's granting of summary judgment on the ground that there is no genuine issue of material fact that an agency relationship did not exist between the [municipal] defendants and [Smith] at the time of his motor vehicle accident with the plaintiff?" *Fiano* v. *Old Saybrook Fire Co. No. 1, Inc.*, 329 Conn. 910, 186 A.3d 14 (2018). We affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following facts, which we have supplemented and viewed in the light most favorable to the plaintiff for purposes of reviewing the trial court's grant of summary judgment. "Smith became a junior member of the fire company in 2012.[3] As a junior member, he was authorized to fight exterior fires and respond to other emergency calls. Smith possessed an electronic key fob that enabled him to enter the firehouse during the day. Smith, along with the other members of the fire company, was encouraged [by the fire company's chiefs and other officers] to spend time at the firehouse monitoring the radio for emergency calls in order to quicken response times, perform training exercises, and to build comradery with one another. In order to entice mem-

bers to spend time at the firehouse, the fire company provided televisions, computers, a weight room, laundry facilities, and showers." (Footnote added.) *Fiano* v. *Old Saybrook Fire Co. No. 1, Inc.*, supra, 180 Conn. App. 734.

John Dunn, the chief of the fire company at the time of the accident, testified at his deposition that, "[d]epending on the incident," it can be advantageous for firefighters to be at the firehouse so that they are available to respond immediately to any calls that come in. Dunn further testified that, if an adult firefighter who is authorized to drive a fire truck were at the firehouse, it would be beneficial to the fire company for firefighters to be there when an emergency call came in because "the fire truck could leave the building quicker than if [the firefighters] came from their home[s] . . . ."

"The fire company utilized a 'points system' in order to track a firefighter's participation, and the firefighters were required to obtain a minimum number of points in order to maintain active membership. Firefighters earned points by responding to emergency calls, staffing the firehouse during emergencies, and, at the fire company's discretion, spending time at the firehouse waiting for a call. Additionally, although the fire company is a volunteer department, the town's firefighters received monetary compensation for their duties. Full members of the fire company are eligible for pensions and receive tax abatements from the town. Members are also paid in the event they respond to a brush fire. Prior to the accident, Smith personally received payment for his time spent staffing the firehouse during emergencies.

"As a junior member, Smith was not allowed to drive any of the fire company's vehicles. Thus, Smith used his personal vehicle to respond to emergency calls, [to] travel to and from the firehouse, and to attend training. Using this vehicle, Smith also would transport other members of the company to emergencies and other fire company related events. The fire company instructed how its members were to use their personal vehicles when responding to emergencies, such as how to properly park at the scene. In his personal vehicle, Smith kept his company issued firefighting equipment, which included a helmet, coat, bunker pants, and fire boots. His vehicle was adorned with a special license plate that identified him as a member of the fire company, which grants him access to closed roads during emergencies."

"On [October 26, 2013] the day of the accident, Smith went to the firehouse [on Main Street in Old Saybrook] because he had a 'couple [of] extra hours to spare.' Smith's girlfriend at the time, who also was a junior member of the fire company, and two other members of the fire company, were also present at the firehouse

that day. Smith spent his time at the firehouse monitoring the radio for emergency calls. After spending approximately three and one-half hours at the firehouse, Smith left with the intention to go home to change his clothing in order to have his picture taken for his senior yearbook. Smith departed the firehouse in his personal vehicle, and, as Smith pulled out of the firehouse driveway onto Main Street, his vehicle and the plaintiff's vehicle collided." *Fiano* v. *Old Saybrook Fire Co. No. 1*, *Inc.*, supra, 180 Conn. App. 734–35.

Thereafter, the plaintiff, who was seriously injured in the collision, brought this action alleging that the collision was the result of Smith's negligent operation of his vehicle, and the municipal defendants were vicariously liable for Smith's negligence because he was their agent or employee and was performing duties within the scope of his employment at the time of the accident. The municipal defendants filed a motion for summary judgment, claiming that there was no genuine issue of material fact that Smith was not acting as the agent or employee of the fire company at the time of the accident because he had left the firehouse and was on his way home to attend to personal matters. Accordingly, they argued, there was no basis for vicarious liability. After the trial court summarily denied the motion, the municipal defendants filed a motion to reargue and for articulation. The trial court also denied that motion. On the day before jury selection was scheduled to commence, the municipal defendants filed a second motion to reargue and for reconsideration. The trial court granted that motion the same day. The next day, the trial court vacated its prior decision denying the municipal defendants' motion for summary judgment, granted the motion and rendered judgment in favor of those defendants.[4]

The plaintiff then appealed to the Appellate Court. That court concluded that, because Smith was "in the process of leaving [the firehouse] to attend to his personal affairs" when the accident occurred, "he was no longer furthering the [municipal] defendants' interests at that time." Id., 739. Accordingly, the Appellate Court concluded that the trial court properly had determined that there was no genuine issue of material fact that Smith was not acting as the fire company's employee, and it affirmed the judgment of the trial court. See id., 744.

This certified appeal followed. The plaintiff contends that, contrary to the conclusions of the trial court and the Appellate Court, there is a genuine issue of material fact as to whether Smith was furthering the fire company's interests at the time of the accident and, therefore, was acting within the scope of his employment, because there was evidence that would support a finding that the fire company benefited from his presence in close proximity to the firehouse when he was "ready,

willing and able" to respond immediately to any emergency calls that might come in. We disagree.

We begin with the standard of review. "In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle[s] him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § 380 [now § 17-45]. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Allstate Ins. Co.* v. *Barron*, 269 Conn. 394, 405–406, 848 A.2d 1165 (2004).

We next review the legal principles governing an employer's vicarious liability for the acts of an employee. Under the doctrine of respondeat superior, "[a] master is liable for the wilful torts of his servant committed within the scope of the servant's employment and in furtherance of his master's business." *Pelletier* v. *Bilbiles*, 154 Conn. 544, 547, 227 A.2d 251 (1967). "A servant acts within the scope of employment while engaged in the service of the master, and it is not synonymous with the phrase during the period covered by his employment. . . . While a servant may be acting within the scope of his employment when his conduct is negligent, disobedient and unfaithful . . . that does not end the inquiry. Rather, the vital inquiry in this type of case is whether the servant on the occasion in question was engaged in a disobedient or unfaithful conducting of the master's business, or was engaged in an abandonment of the master's business. . . . Unless [the employee] was actuated at least in part by a purpose to serve a principal, the principal is not liable." (Citations omitted; internal quotation marks omitted.)

*A-G Foods, Inc.* v. *Pepperidge Farm, Inc.*, 216 Conn. 200, 209–10, 579 A.2d 69 (1990); see also *Harp* v. *King*, 266 Conn. 747, 782–83, 835 A.2d 953 (2003) ("[i]n determining whether an employee has acted within the scope of employment, courts look to whether the employee's conduct: [1] occurs primarily within the employer's authorized time and space limits; [2] is of the type that the employee is employed to perform; and [3] is motivated, at least in part, by a purpose to serve the employer").

The parties in the present case also rely on general agency principles. "Agency is defined as the fiduciary relationship [resulting] from [the] manifestation of consent by one person to another that the other shall act on his [or her] behalf and subject to his [or her] control, and consent by the other so to act . . . ." (Internal quotation marks omitted.) *Beckenstein* v. *Potter & Carrier, Inc.*, 191 Conn. 120, 132, 464 A.2d 6 (1983). "An essential ingredient of agency is that the agent is doing something at the behest and for the benefit of the principal." *Leary* v. *Johnson*, 159 Conn. 101, 105–106, 267 A.2d 658 (1970). "[I]t must be the affairs of the principal, and not solely the affairs of the agent, which are being furthered in order for the doctrine [of respondeat superior] to apply." *Mitchell* v. *Resto*, 157 Conn. 258, 262, 253 A.2d 25 (1968).

"In most cases, it is the function of the jurors to determine from the facts before them whether . . . a servant was acting within the scope of his employment. . . . In some situations, however, the acts of the servant are so clearly without the scope of his authority that the question is one of law." (Citation omitted; internal quotation marks omitted.) *Brown* v. *Housing Authority*, 23 Conn. App. 624, 628, 583 A.2d 643 (1990), cert. denied, 217 Conn. 808, 585 A.2d 1233 (1991).

In the present case, the Appellate Court's conclusion that there was no genuine issue of material fact that Smith was not acting within the scope of his employment by the fire company at the time of the accident as a matter of law was based in large part on this court's decision in *Levitz* v. *Jewish Home for the Aged, Inc.*, 156 Conn. 193, 239 A.2d 490 (1968). See *Fiano* v. *Old Saybrook Fire Co. No. 1, Inc.*, supra, 180 Conn. App. 743–44. In *Levitz*, the defendant Igors Blankenfeld was an employee of the defendant Jewish Home for the Aged, Inc. (Home), in New Haven. See *Levitz* v. *Jewish Home for the Aged, Inc.*, supra, 194. Blankenfeld also lived at the Home. See id., 195. On the date at issue, Blankenfeld left his room in the Home and went to the office, where he received his pay. Id., 196. He then left the Home and went to his vehicle, which was parked on a public road in front of the Home. Id., 195–96. He intended to drive the vehicle downtown to pay some of his own bills. See id., 196. When he started the vehicle, however, "it went out of control, mounted a curb and

struck the plaintiff, [a resident of the Home] who was seated on the steps of the [Home's] premises." Id. The plaintiff brought a negligence action against Blankenfeld and the Home, as Blankenfeld's employer. See id., 194. After the jury returned a verdict for the plaintiff against both defendants, the Home filed a motion to set aside the verdict and for judgment in its favor notwithstanding the verdict. See id. The trial court granted the motion on the ground that the evidence conclusively established that Blankenfeld was not acting on behalf of the Home at the time of the accident. See id. On appeal, this court affirmed the judgment of the trial court, concluding that "[t]he evidence is reasonably susceptible of but one conclusion, that is, that, at the time of the accident, Blankenfeld was not performing an act for the Home in furtherance of its business." Id., 197–98.

In the present case, Smith had left the firehouse, entered his own personal vehicle and driven the vehicle away from the premises with the intent of attending to his own personal affairs when the accident occurred. Thus, in the absence of any additional circumstances rendering the case meaningfully distinguishable, we would agree with the Appellate Court that *Levitz* is controlling here. The plaintiff contends that there are three such circumstances. First, the plaintiff contends that, unlike in the present case, there was no evidence in *Levitz* that Blankenfeld's off duty presence at the Home benefited his employer. Second, the plaintiff contends that Blankenfeld's presence at the Home "had nothing to do with his job and everything to do with his status as a resident," while Smith was present at the firehouse to be on call for emergencies. Third, he contends that Blankenfeld had left the Home's premises before entering his vehicle, whereas, in the present case, "Smith was still on [fire company] property when he negligently pulled into the plaintiff, and never successfully left the premises."

We can easily dispose of the plaintiff's second and third claims. With respect to the plaintiff's claim that *Levitz* is distinguishable because Blankenfeld had not been working at the Home before the accident occurred, this court expressly stated in *Levitz* that, "[e]ven if we were to assume that Blankenfeld had worked at his usual employment on the day of the accident, this fact, in the light of the other evidence, would not impose liability on the Home." *Levitz* v. *Jewish Home for the Aged, Inc.*, 156 Conn. 198. With respect to the plaintiff's claim that *Levitz* is distinguishable because Blankenfeld's car was not parked on the Home's premises, nothing in *Levitz* suggests that the result in that case turned on the precise location of Blankenfeld's vehicle when he entered it. Rather, the court's exclusive focus was on whether Blankenfeld was "performing an act for the Home in furtherance of its business" when he entered and drove the car.

Id., 197–98.

Accordingly, we turn to the plaintiff's primary contention that this case is distinguishable from *Levitz* because Smith's presence in close proximity to the firehouse at the time of the accident benefited his employer. Specifically, the plaintiff contends that the evidence would support a finding that the fire company benefited from Smith's presence on the premises after he left the firehouse and entered his vehicle because he would have been available to respond immediately to an emergency call.

In support of this claim, the plaintiff relies on the Appellate Court's decision in *Glucksman* v. *Walters*, 38 Conn. App. 140, 659 A.2d 1217, cert. denied, 235 Conn. 914, 665 A.2d 608 (1995).[5] In *Glucksman*, the defendant, Kris Walters, was a part-time employee of the defendant Young Men's Christian Association (YMCA) in Stamford. See id., 141, 142. During a pickup basketball game at the YMCA, Walters assaulted and seriously injured the plaintiff, Allen Glucksman, after Glucksman fouled Walters. See id., 142–43. Walters was not working his scheduled hours at the time, but evidence was presented that part-time employees of the YMCA "considered themselves to be on duty, ready to help maintain order in the facility, during work and off hours." Id., 143. The plaintiff brought a negligence action against both Walters and the YMCA, under the doctrine of respondeat superior. See id., 141. The trial court granted the YMCA's motion for a directed verdict in its favor. See id. The Appellate Court reversed that ruling on appeal; id., 148; concluding that the evidence would support findings that, "but for his position as an employee, Walters would not have been on the basketball court, that Walters had been responsible for helping to maintain order on the basketball court, that the YMCA benefited when Walters played basketball because it had an employee on the court to help keep order, that the commission of fouls disrupts a basketball game, and that Walters attacked Glucksman in a misguided effort to prevent Glucksman from committing fouls and disrupting the game." Id., 145.

In the present case, the plaintiff contends that *Glucksman* supports his claim that Smith was acting within the scope of his employment when the accident occurred because, like Walters, Smith's presence at the firehouse was due to his employment there, and he was providing a benefit to the fire company by being ready, willing and able to respond immediately to emergency calls. The plaintiff fails to recognize, however, that, in *Glucksman*, Walters was not merely ready, willing and able to provide a benefit to the YMCA, *but he actually engaged in an effort to do so when he attempted to maintain order on the basketball court*. Thus, *Glucksman* does not support the proposition that an employee who is, in fact, attending to purely personal

affairs, but who is ready, willing and able to provide a benefit to his employer if summoned to do so, may be deemed to be acting for the employer's benefit, even if the employee is not actually summoned and does not actually provide any beneficial services.

Cases from our sister jurisdictions addressing the question of whether on call employees are acting for the benefit of their employers merely by virtue of being on call are instructive on this issue. In *Wayman* v. *Accor North America, Inc.*, 45 Kan. App. 2d 526, 251 P.3d 640, review denied, 292 Kan. 969 (2011), Frederick Ristow was the general manager of a Motel 6, where he also lived. See id., 527–28. As part of his work duties, Ristow was "on call [twenty-four] hours per day to handle emergency situations." Id., 528. On the day in question, Ristow returned to the motel early in the afternoon after visiting out of state family members. See id. "After asking the manager on duty to stay so he could get something to eat, Ristow left the motel and went to [a nearby tavern] where he stayed until approximately 8 p.m. drinking alcohol. . . . Although Ristow understood that he was on call if the manager on duty needed help at the motel, he did not receive any phone calls that day about problems at the motel." Id. Ristow left the tavern at approximately 8 p.m. and returned to the motel. See id. As he attempted to park his vehicle, he struck and injured the plaintiff, Donald Wayman, who was a guest at the motel and was standing near the doorway of his room. See id., 527–28. Wayman filed an action against both Ristow and, under a theory of vicarious liability, his employer. See id., 529. The trial court granted the employer's motion for summary judgment on the ground that Ristow had not been acting within the scope of his employment. See id., 530.

On appeal, the Court of Appeals of Kansas observed that "the modern rationale for vicarious liability is the enterprise justification concept . . . . Under such a justification, the losses caused by an employee's tort are placed on the enterprise as a cost of doing business and on the employer for having engaged in the enterprise." (Internal quotation marks omitted.) Id., 538. The court concluded that "[i]mposing vicarious liability on an employer for the negligent acts of an employee merely because the employee is on call does not serve this justification." Id. Because Ristow had been returning from a "purely personal . . . excursion" when the accident occurred, and had not been called to respond to any emergency at the motel, the court concluded that "he was not performing any work-related activity," despite the fact that the accident occurred in the motel parking lot. Id., 539; see also *Le Elder* v. *Rice*, 21 Cal. App. 4th 1604, 1608–1609, 26 Cal. Rptr. 2d 749 (1994) (when employee was on personal errand, fact that he was on call twenty-four hours per day seven days per week and had ability to respond to calls at any hour from any location did not mean that

his activities were within scope of employment, even though his being on call benefited employer); *Le Elder* v. *Rice*, supra, 1609 ("[p]ublic policy would be ill-served by a rule establishing [twenty-four] hour employer liability for on-call employees, regardless of the nature of the employee's activities at the time of an accident"); *Le Elder* v. *Rice*, supra, 1610 ("[on call] accessibility or availability of an employee does not transform his or her private activity into company business"); *Migliore* v. *Gill*, 81 So. 3d 900, 903, 904 (La. App. 2011) (fact that employee was on call and expected to report to employer's premises within thirty minutes of being summoned did not give rise to vicarious liability when employee was driving personal vehicle and was engaged in strictly personal activity at time of accident, and employer had exercised no control over him), review denied, 84 So. 3d 555 (La. 2012); *Clickner* v. *Lowell*, 422 Mass. 539, 543–44, 663 N.E.2d 852 (1996) (for purposes of determining whether municipal employer was required to indemnify employee, fact that employee was on call and was attempting to call employer in response to page at time of accident did not mean that employee was acting within scope of employment duties); *Johnson* v. *Daily News, Inc.*, 34 N.Y.2d 33, 35–36, 312 N.E.2d 148, 356 N.Y.S.2d 1 (1974) (employer is not vicariously liable for acts of on call employee unless employee is "performing some act in furtherance of a duty he owes the employer and . . . the employer is, or could be, exercising some control, directly or indirectly, over his activity"); *Thurmon* v. *Sellers*, 62 S.W.3d 145, 155 (Tenn. App. 2001) (in determining whether on call employee is acting within scope of employment, court should consider whether employee's use of vehicle benefited employer, whether employee was subject to employer's control at time of accident, whether employee's activities were restricted while on call, whether employee's use of vehicle was authorized by employer and employee's primary reason for using vehicle at time of accident).

We recognize that the plaintiff in the present case has expressly denied making any claim that the fire company would be vicariously liable for any tort committed by Smith at any time that he was on call to respond to emergencies. Rather, he claims that the fire company is liable here only because Smith was still on or very close to the firehouse premises when the accident occurred and, therefore, that he would have been able to respond immediately if there had been an emergency call. We are aware of no authority, however, for the proposition that the test for determining whether an employee was acting within the scope of his employment or, instead, was merely on call, is *how long* it would have taken the employee to respond to the employer's call to return to duty *if* such a call had occurred. Rather, the test is whether, at the relevant time, the employer had actually exercised control over

the employee and the employee was actually performing some act for the employer's benefit—*other* than the benefit inherent in merely being on call. Although we acknowledge that it may be difficult in some situations to determine the precise line between being on duty and being on call, we conclude in the present case that a reasonable jury could conclude only that, by the time that Smith entered his vehicle, at the very latest, he had embarked on the pursuit of purely personal affairs, and nothing that occurred after that point and before the accident brought him back under the control of the fire company.

The plaintiff, however, raises two additional claims to support his position that there is a genuine issue of material fact as to whether Smith was on duty when the accident occurred. First, he points to Dunn's testimony that he believed that a firefighter who had been involved in an accident while driving home after a call was still "on duty" at that time for purposes of workers' compensation law. See General Statutes § 31-275 (1) (A) (i) ("[f]or a police officer or firefighter, 'in the course of his employment' encompasses such individual's departure from such individual's place of abode to duty, such individual's duty, and the return to such individual's place of abode after duty"). Second, he contends that a jury reasonably could find that, as a *volunteer* firefighter, Smith was on duty for workers' compensation purposes because he testified that "he was following the orders of superior officers in being present at the firehouse on a weekend . . . ." See General Statutes § 7-314 (a) (with respect to volunteer firefighters, the term fire duties includes "duties performed while at fires, while answering alarms of fire, while answering calls for mutual aid assistance, while returning from calls for mutual aid assistance, while directly returning from fires, while at fire drills or parades, while going directly to or returning directly from fire drills or parades, while at tests or trials of any apparatus or equipment normally used by the fire department, while going directly to or returning directly from such tests or trials, while instructing or being instructed in fire duties, while answering or returning from ambulance calls where the ambulance service is part of the fire service, while answering or returning from fire department emergency calls and any other duty ordered to be performed by a superior or commanding officer in the fire department"); see also *Evanuska* v. *Danbury*, 285 Conn. 348, 352, 939 A.2d 1174 (2008) (proof that injury was sustained during performance of "fire duties" within meaning of § 7-314 [a] is predicate to filing workers' compensation claim pursuant to General Statutes § 7-314a [a]); *Evanuska* v. *Danbury*, supra, 357–58 ("General Statutes §§ 7-314a and 7-314b are the only procedural vehicles available for volunteer firefighters to obtain workers' compensation benefits for injuries sustained while performing fire duties" [footnote

omitted]).[6]

We are not persuaded. Even if we were to assume that Smith was acting within the scope of his employment for purposes of workers' compensation law—an issue on which we express no opinion—that would not necessarily mean that he was acting within the scope of his employment for purposes of imposing vicarious liability on his employer. The public policies underlying workers' compensation and the doctrine of respondeat superior are very different.[7] Specifically, "[t]he purpose of the [workers'] compensation statute is to compensate the worker for injuries arising out of and in the course of employment, without regard to fault, by imposing a form of strict liability on the employer. . . . The Workers' Compensation Act compromise[s] an employee's right to a [common-law] tort action for work related injuries in return for relatively quick and certain compensation." (Citation omitted; internal quotation marks omitted.) *Panaro* v. *Electrolux Corp.*, 208 Conn. 589, 598–99, 545 A.2d 1086 (1988). In contrast, the public policy underlying the doctrine of respondeat superior is that "substantial justice is best served by making a master responsible for the injuries caused by his servant acting in his service, when set to work by him to prosecute his private ends, with the expectation of deriving from that work private benefit." (Internal quotation marks omitted.) *Chase* v. *New Haven Waste Material Corp.*, 111 Conn. 377, 380, 150 A. 107 (1930). Accordingly, although there may be some overlap in the factors to be considered in determining whether an employee is acting within the scope of his employment for purposes of workers' compensation law—many of which are established by statute—and the factors to be considered under the doctrine of respondeat superior, there is no reason to expect that those factors will be identical in all respects. We conclude, therefore, that, even if the plaintiff were correct that Smith was acting within the scope of his employment for purposes of workers' compensation law at the time of the accident because he was in close proximity to the firehouse, where he had been engaged in fire duties for purposes of § 7-314, Smith was not acting within the scope of his employment for purposes of establishing vicarious liability because he was engaged in the pursuit of purely personal affairs and was not acting for the benefit of or under the control of the fire department when the accident occurred.

For the foregoing reasons, we conclude that a reasonable jury, properly instructed in the legal principles governing the doctrine of respondeat superior, could conclude only that Smith was engaged in the pursuit of personal affairs when the accident occurred, and he was not acting for the benefit of the fire company or in furtherance of its interests. Accordingly, we conclude that the Appellate Court properly upheld the trial court's grant of summary judgment in favor of the municipal

defendants on the ground that there is no genuine issue of material fact that Smith was not acting within the scope of his employment at the time of the accident and, therefore, that the municipal defendants could not be held vicariously liable for his negligence as a matter of law. We therefore affirm the judgment of the Appellate Court.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] General Statutes § 7-308 (b) provides in relevant part: "Each municipality of this state, notwithstanding any inconsistent provision of law, general, special or local, or any limitation contained in the provisions of any charter, shall protect and save harmless any volunteer firefighter, volunteer ambulance member or volunteer fire police officer of such municipality from financial loss and expense, including legal fees and costs, if any, arising out of (1) any claim, demand, suit or judgment by reason of alleged negligence on the part of such volunteer firefighter, volunteer ambulance member or volunteer fire police officer while performing fire, volunteer ambulance or fire police duties . . . ."

[2] General Statutes § 7-465 (a) provides in relevant part: "Any town, city or borough, notwithstanding any inconsistent provision of law, general, special or local, shall pay on behalf of any employee of such municipality, except firemen covered under the provisions of section 7-308, and on behalf of any member from such municipality of a local emergency planning district, appointed pursuant to section 22a-601, all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person or property, except as set forth in this section, if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment . . . ."

We note that § 7-465 has been amended by the legislature since the events underlying the present case; see, e.g., Public Acts 2015, No. 15-85, § 1; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[3] Smith was a junior in high school when he joined the fire company as a junior member.

[4] In his appeal to the Appellate Court, the plaintiff claimed that the trial court improperly granted the municipal defendants' second motion to reargue and for reconsideration and then granted their motion for summary judgment without providing him with an opportunity to be heard on the issue. See *Fiano* v. *Old Saybrook Fire Co. No. 1, Inc.*, supra, 180 Conn. App. 727. The Appellate Court concluded that the trial court improperly granted the motion for summary judgment without holding a hearing, as required by Practice Book § 11-12, but that the impropriety did not require reversal because it was harmless. See id., 730. That portion of the Appellate Court's opinion, concerning the trial court's failure to hold a hearing before granting the second motion to reargue and for reconsideration, is not at issue in this certified appeal because we limited certification to the issue of whether the ruling was correct on the merits.

[5] The plaintiff also relies on two Superior Court cases, *Ambrosio* v. *AWAC Services Co.*, Docket No. CV-12-6036172-S, 2014 WL 2854076 (Conn. Super. May 16, 2014), and *Sheftic* v. *Marecki*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-56764 (October 22, 1999) (25 Conn. L. Rptr. 584). Both of these cases are distinguishable. In *Ambrosio*, the court relied on the Appellate Court's decision in *Hodgate* v. *Ferraro*, 123 Conn. App. 443, 462, 3 A.3d 92 (2010)—a workers' compensation case—for the proposition that "[t]he going and coming rule (which precludes recovery for injuries sustained in travel to and from the place of employment) has no application to employees who have no fixed place of employment. . . . Where injuries are incurred while an employee is traveling and it appears that it was the employment which impelled the employee to make the trip, the risk of the trip is a hazard of the employment." (Internal quotation marks omitted.) *Ambrosio* v. *AWAC Services Co.*, supra, *2. Thus, even if we were to assume that this principle of workers' compensation law applies when determining liability under the doctrine of respondeat superior, the case is distinguishable because the plaintiff has neither claimed nor cited any authority for the

proposition that the firehouse was not Smith's fixed place of employment. In *Sheftic*, the court concluded that the so-called " 'going and coming rule' " that other jurisdictions have adopted in the context of vicarious liability claims does not apply in cases in which the employee has become intoxicated at a function hosted by the employer because, "[i]f the employer values the 'conviviality' it believes alcohol adds to the functions it sponsors, the employer should be expected to pay for any carnage on the highway resulting from intoxication." *Sheftic* v. *Marecki*, supra, 585–86. In the present case, the fire company did not provide any alcohol to Smith.

[6] The municipal defendants appear to contend that the definition of "fire duties" set forth in § 7-314b (b) is the exclusive definition for workers' compensation purposes. See General Statutes § 7-314b (b) (defining " 'fire duties' " as "duties performed while at fires, answering alarms of fire, answering calls for mutual aid assistance, returning from calls for mutual aid assistance, at fire drills or training exercise, and directly returning from fires"). In *Evanuska*, however, this court applied the definition of "fire duties" set forth in § 7-314 (a) to a workers' compensation claim brought pursuant to § 7-314a (a). See *Evanuska* v. *Danbury*, supra, 285 Conn. 352.

[7] Indeed, "courts have repeatedly noted the distinction between [workers'] compensation law and the theory of vicarious liability." *Wayman* v. *Accor North America, Inc.*, supra, 45 Kan. App. 2d 537, citing *O'Shea* v. *Welch*, 350 F.3d 1101, 1106 (10th Cir. 2003) ("[w]e also agree that the public policies behind [workers'] compensation and third party liability cases are different"), *Garcia* v. *Estate of Arribas*, 363 F. Supp. 2d 1309, 1318 (D. Kan. 2005) ("[workers'] compensation laws . . . are quite different, in many respects, from the laws pertaining to the liability of employers to third parties"), *Stokes* v. *Denver Newspaper Agency, LLP*, 159 P.3d 691, 693–95 (Colo. App. 2006) (discussing differences between respondeat superior and workers' compensation theories of recovery), cert. denied, Colorado Supreme Court, Docket No. 06SC697 (April 23, 2007), and *Salt Lake City Corp.* v. *Labor Commission*, 153 P.3d 179, 182 (Utah 2007) ("[w]ith very different presumptions governing [workers'] compensation and negligence cases, it would not be wise to hold that the rules governing scope of employment questions in one area are wholly applicable to the other" [internal quotation marks omitted]).

In support of his claim that this court should be guided by principles of workers' compensation law in the present case, the plaintiff relies on this court's statement that "a charge relating to principles of law enunciated in workers' compensation cases is equally applicable to cases brought under the common law." *Cirrito* v. *Turner Construction Co.*, 189 Conn. 701, 705, 458 A.2d 678 (1983); see also id. (for purpose of construing scope of indemnification clause in construction contract that was intended to protect general contractor from potential liability as principal employer under workers' compensation statutes by requiring reimbursement from subcontractors for compensation payments for which it might be obligated, court considered principles of workers' compensation law); *D'Addario* v. *American Automobile Ins. Co.*, 142 Conn. 251, 254, 113 A.2d 361 (1955) (for purpose of construing scope of exclusion from insurance policy for any obligation for which insured could be held liable under workers' compensation law, court considered workers' compensation principles). We are not persuaded. In *Cirrito* and *D'Addario*, this court merely recognized that principles of workers' compensation law governing the scope of employment are relevant when construing a contract that was intended to incorporate those principles. The cases do not support the proposition that this court is *bound* by principles of workers' compensation law whenever it is required to determine whether activities were within the scope of employment for any other purpose.